**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| LISA FLANAGAN; and TOM MARKES, Plaintiffs, | ) ) ) ) Case No. ) v. ) ) **JURY TRIAL DEMANDED** |
| STERIGENICS U.S., LLC; BOB NOVAK; ROGER CLARK; and GTCR, LLC, Defendants. | |

<u>**NOTICE OF REMOVAL**</u>

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441 & 1446, Defendant Sterigenics U.S., LLC

("Sterigenics"), hereby removes to this Court the above-styled action, pending as Case No.

2018L010477[1] in the Circuit Court of Cook County, Illinois ("the Action"). In support of this

Notice of Removal, Sterigenics states as follows:

**I.      INTRODUCTION.**

1.      The Action is properly removed to this Court pursuant to the federal removal

statute, 28 U.S.C. § 1441, because: (i) the Action is pending in the Circuit Court of Cook

County, Illinois, which is within the Northern District of Illinois, Eastern Division, 28 U.S.C.

§ 93(a)(1); (ii) the Court has both diversity jurisdiction and original federal jurisdiction over the

Action; and (iii) the procedural requirements for removal set forth in 28 U.S.C. § 1446 and 28

U.S.C. § 1453 are satisfied.

---

[1] Plaintiffs have filed a Motion for Leave to File First Amended Complaint at Law Instanter in the Circuit Court. Plaintiffs have not, however, served Sterigenics—nor any other defendant—with this amended complaint, which seeks to dismiss certain defendants and add another. Nonetheless, Defendants remove on the basis of the First Amended Complaint. A copy of the Motion for Leave to File First Amended Complaint at Law Instanter and the proposed First Amended Complaint are included as part of the State Court Record that immediately follows this Notice of Removal.

2.      More specifically, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a), because complete diversity of citizenship exists as between Plaintiffs Lisa Flanagan and Tom Markes ("Plaintiffs") and Sterigenics.  Defendants GTCR LLC ("GTCR"), Bob Novak, and Roger Clark are fraudulently joined to the Action, thus their citizenship should be disregarded for purposes of determining diversity.  Additionally, this Court also has original federal jurisdiction under 28 U.S.C. § 1331, as the Action arises under federal law.

## II.     FACTS.

3.      On September 26, 2018, Plaintiffs filed their Complaint in the Circuit Court of Cook County, Illinois.  The Complaint was served with summons upon Sterigenics on October 24, 2018.  On October 26, 2018, Plaintiffs filed a Motion for Leave to File First Amended Complaint at Law Instanter.  Sterigenics has not yet been served with this First Amended Complaint itself.  A copy of the original Complaint and summons, as well as the First Amended Complaint as attached to Plaintiffs' Motion for Leave to File First Amended Complaint at Law Instanter, are attached as Exhibit A.  This case arises out of an August 21, 2018, report issued by the federal government's Agency for Toxic Substances and Disease Registry ("ATSDR") concerning emissions of ethylene oxide in Willowbrook, Illinois, where Sterigenics operates a contract sterilization facility (the "Willowbrook facility").  A copy of this report is attached as Exhibit B.  The ATSDR's report was published by the U.S. Environmental Protection Agency ("USEPA") on its public-access website on August 22, 2018.[2]

---

[2] *See Evaluation of Potential Health Impacts from Ethylene Oxide Emissions*, U.S. DEP'T OF HEALTH AND HUM. SERVICES 1 (August 21, 2018), https://www.atsdr.cdc.gov/HAC/pha/sterigenic/Sterigenics_International_Inc-508.pdf.

A.     **Background on Sterigenics and Ethylene Oxide.**

4.     Sterigenics is a leading provider of state-of-the-art sterilization services.  Ethylene oxide, a gas, is a heavily regulated chemical.  As detailed here, Sterigenics' use of ethylene oxide at the Willowbrook facility is subject to federal regulations promulgated by USEPA and the federal Food and Drug Administration ("FDA"), as well as Illinois regulations promulgated by the Illinois Environmental Protection Agency ("IEPA").  Sterigenics' Willowbrook facility is operating legally and in compliance with applicable regulations.  Indeed, Sterigenics' Willowbrook facility not only meets federal and state standards, but exceeds them.  (Declaration of Kathleen Hoffman ("Hoffman Decl.") ¶¶ 2, 5 (attached as Exhibit. C).)

5.     Sterigenics primarily contracts with healthcare products companies to sterilize medical devices, medical equipment, and surgical kits sold or used by those customers.  The FDA regularly inspects[3] Sterigenics' facilities, including the Willowbrook facility, given the importance of sterilization as a final step in the production and preparation of medical and surgical products in the U.S.  (*Id.* at ¶¶ 3–4.)

6.     Ethylene oxide is critical to the healthcare industry.  Over 50% of the medical devices and nearly 90% of the surgical kits[4] used in patient procedures in the U.S. are sterilized by ethylene oxide.  According to the Ethylene Oxide Sterilization Association, ethylene oxide sterilizes over 20 billion medical devices each year in the United States alone.  (*Id.* at ¶ 5.)

---

[3] *See Compliance Policy Guide Section 100.550 Status and Responsibilities of Contract Sterilizers Engaged in the Sterilization of Drugs and Devices*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm073824.htm (last visited October 18, 2018).

[4] A "surgical kit" refers to the set of instruments a surgeon uses during an operation. This may include scalpels, clamps, surgical staplers, drills, and other equipment such as the sterilized gowns and drapery used during the procedure.  (Hoffman Decl. ¶ 3.)

7.     The Willowbrook facility, like many ethylene oxide sterilization process plants, is the sole sterilization facility for a number of medical device companies in the Midwest.  On an average day, the Willowbrook facility sterilizes 1,000 cardiac devices used in heart surgery, 1,000 knee implants, 1,500 surgical procedure kits, 16,000 catheters, 11,000 syringes for injections used in radiology diagnosis, and thousands of diabetes monitoring and care kits, renal care products, neurosurgical devices, and respiratory care products.  (*Id.* at ¶ 6.)

8.     For the vast majority of single-use medical devices, complex implantable devices, and surgical kits, ethylene oxide sterilization is widely used because it is the only practical, FDA-approved sterilization method available.  While heat and radiation can sometimes be used for sterilization, those processes degrade plastics and other synthetic materials that are widely used in medical devices and surgical kits, including hypodermic needles, catheters and many other common hospital and operating room equipment.  (*Id.* at ¶ 8.)  Without ethylene oxide sterilization, infection risks would soar dramatically in hospitals and operating rooms.  (*Id.* at ¶ 7.)  For heat- and irradiation-sensitive devices, no currently available sterilization method exists that has been accepted and approved as a practical replacement for ethylene oxide.  (*Id.* at ¶ 9.)

9.     The Willowbrook facility is subject to stringent FDA requirements.  As part of its Good Manufacturing Practices regulations, the FDA requires that medical devices and equipment be sterilized pursuant to exacting protocols that must be rigorously tested and validated.[5] Detailed procedures exist for the equipment, methods, and steps used for the ethylene oxide sterilization of each type of medical device or surgical kit at the Willowbrook facility, and that

---

[5] *See Compliance Policy Guide Section 100.550 Status and Responsibilities of Contract Sterilizers Engaged in the Sterilization of Drugs and Devices*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/ucm073824.htm (last visited October 18, 2018).

equipment is continually checked and calibrated to ensure adherence to those procedures. (*Id.* at ¶ 10.) These FDA-required validation and calibration processes are expensive and can take anywhere from four to six months to complete. (*Id.* at ¶ 11.)

10. Moreover, it is important to understand that ethylene oxide is present in an urban atmosphere, such as the Chicago area, from a number of different sources, including natural sources as well as everyday and commercial activities. Commercial sources of ethylene oxide in the air we breathe include chemical manufacturers, hospitals, and medical sterilization facilities near where people work or live. (*Id.* at ¶¶ 13–14.) More than a dozen medical facilities located in DuPage and Cook counties exist that use ethylene oxide to sterilize medical products – Sterigenics' Willowbrook facility is far from alone. (*Id.* at ¶ 15.) As a result of all of these natural and other sources, a general background level of ethylene oxide exists in the air. Not surprisingly, then, USEPA itself explicitly recognizes that a certain level of ethylene oxide will be present in the environment and the air we all breathe. (*Id.* at ¶ 12.)

**B. The Release of the ATSDR Report.**

11. On August 21, 2018, ATSDR released a report purporting to address whether ethylene oxide emissions from the Willowbrook facility pose a public health problem for people living and working in or near Willowbrook. Broadly speaking, the ATSDR report combined data gathered by USEPA with a new and controversial risk assessment used by USEPA to estimate the potential risk posed by any given concentration of ethylene oxide. (This 2016 assessment was derived pursuant to USEPA's Integrated Risk Information System ("IRIS") program.) Based on these inputs, the ATSDR report concluded that if the ethylene oxide concentrations actually represented Willowbrook area residents' exposure (*which it did not*), those residents could face potential increased cancer risks. Unfortunately, the report

5

was released with neither context nor explanation. As noted in a letter signed by Senators

Tammy Duckworth and Richard Durbin, as well as Representative Bill Foster, "[t]he lack of

context has led to confusion, anxiety, and hardship on both the part of the community and

Sterigenics." A copy of this letter is attached as Exhibit D.[6]

12. During an August 29, 2018, Willowbrook town hall meeting, an ATSDR

representative acknowledged that its report is "not one that indicated immediate health threat or

that there was an emergency situation." (Videotape: Highlights from Village of Willowbrook, IL

Town Hall Meeting (August 29, 2018) at 0:42 (to be filed as Exhibit E).) As the ATSDR

representative explained, its "communication strategy fell through [and] did not allow us to

really put this [report] into context." (*Id.*) Willowbrook Mayor Frank Trilla attempted to allay

community fears caused by the report by stating that ATSDR "took the [worst] case scenario,

multiplied it by 30 years, 250 days a year, 24 hours exposure . . . and the wind had to be identical

for the entire 30 years — under those circumstances 6.4 people out of 1,000 ***might*** be affected by

this." (*Id.* at 8:20.) An ATSDR research officer also attempted to downplay concerns regarding

the report by informing residents that ATSDR "biased [the results] on purpose to try to capture

what might be the worst exposure in the community when they're downwind from the facility."

(*Id.* at 9:55.) The ATSDR representative also admitted, "I don't know if anyone's home 24

hours a day, 7 days a week for an entire year for 33 years. Which is what we assumed." (*Id.* at

10:22.)

13. In calculating the exposure risk in its extreme, worst-case hypothetical, ATSDR

also used the highest concentration of ethylene oxide detected in the residential area samples,

---

[6] A copy of this letter was also published on Senator Duckworth's website. *See* https://www.duckworth.senate.gov
/imo/media/doc/18.09.21%20-%20Letter%20re%20Willowbrook%20ambient%20air%20testing%20request%20-
%20EPA%20Wheeler%20and%20Stepp%20(002).pdf.

which were collected under non-representative weather conditions designed to yield the highest possible number. (Ex. B at p. 11.) As the ATSDR representative admitted, this concentration is ***not*** reflective of actual long-term exposure. In addition, ATSDR intentionally excluded from consideration 21 samples that it acknowledged reflected lower overall measured levels of ethylene oxide. (Ex. B at p. 5–7.) Importantly, the ATSDR report did ***not*** find Sterigenics to be in violation of any applicable USEPA or IEPA regulation or requirement. Indeed, Alec Messina, IEPA Director, stated during the August 29, 2018, town hall meeting that the Willowbrook facility is "in compliance with all the federal regulations including the emissions standards for ethylene oxide . . . . [The facility is] in compliance with those regulations and state law." (Ex. E at 3:46.)

### C. Further Responses to the ATSDR Report.

14. Following the ATSDR report's release, William L. Wehrum, the Assistant Administrator of USEPA for Air and Radiation, attempted to provide greater clarity on the report to ease citizen concerns. Specifically, Mr. Wehrum sent letters to Governor Bruce Rauner and several other senior elected officials specifically noting that "the air concentrations of ethylene oxide are not high enough to cause immediate harm to health for the people in and around Willowbrook." These letters are attached as Group Exhibit F. Further, Mr. Wehrum noted that "[e]arly indications from the post-control stack testing suggest that emissions have indeed been significantly reduced." Mr. Wehrum also pointed out flaws underlying USEPA's recent National Air Toxics Assessment (the "2014 NATA"), which identified Willowbrook as one of a number of areas potentially having an elevated chronic risk from ethylene oxide.[7] NATA is a screening

---

[7] Although this National Air Toxics Assessment is called the "2014 NATA" because it uses emissions data from 2014, USEPA actually published the 2014 NATA in 2018.

7

tool used by the federal government to identify areas of the country, pollutants, or types of pollution sources that may need to be further examined to better understand potential risks to public health. The identification of elevated risks from ethylene oxide in the 2014 NATA are primarily driven by a toxicity value taken from the 2016 IRIS assessment. Mr. Wehrum noted that the NATA assessment's conclusion about the cancer risk of a given concentration of ethylene oxide is based on "someone who is continuously exposed to [ethylene oxide] for 24 hours per day over 70 years."

15. Additionally, on September 20 and 21, 2018, a contractor hired by Sterigenics conducted stack tests to measure the actual emissions from the Willowbrook facility. USEPA and IEPA experts were present to observe these tests. USEPA will review these results and conduct a risk assessment of the Willowbrook area. This risk assessment "will be more comprehensive than either NATA or the ASTDR analysis. It will be similar to the types of risk assessments EPA conducts when it is reviewing its regulations for industries that emit air toxics to determine whether those rules need to be updated to improve protection of public health."[8]

## III. DIVERSITY JURISDICTION EXISTS.

16. A defendant may remove an action from state court to federal court if the action could have been brought in federal court originally. 28 U.S.C. § 1441.

17. Federal diversity jurisdiction exists where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and "is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Both prerequisites are satisfied here.

---

[8] *See* Sterigenics Willowbrook Facility – Latest Update, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, https://www.epa.gov/il/sterigenics-willowbrook-facility-latest-update (last visited Oct. 26, 2018).

**A.       The Amount in Controversy Exceeds $75,000, Exclusive of Interest and Costs.**

18.     A "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold[;]" only when the defendant's "assertion of the amount in controversy is challenged" do the parties need to submit proof.  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); *Midland Mgmt. Co. v. Am. Alternative Ins. Co.*, 132 F. Supp. 3d 1014, 1018 (N.D. Ill. 2015) (same).  The removing party is not required "to establish that it was likely that the plaintiff would obtain a judgment exceeding the amount-in-controversy requirement."  *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 829 (7th Cir. 2011).  Rather "jurisdiction will be defeated only if it appears to a legal certainty that the stakes of the lawsuit do not exceed $75,000."  *Carroll v. Stryker Corp.*, 658 F.3d 675, 680 (7th Cir. 2011).

19.     The nature of Plaintiffs' allegations demonstrate that they seek damages in excess of $75,000.  Plaintiff Flanagan alleges that she is 47 years old and was diagnosed with lymphoma approximately 12 years ago.  (Compl. at ¶ 16.)  Plaintiffs allege that Sterigenics' is responsible for causing Plaintiff Flanagan's lymphoma and that Sterigenics "has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life." (*Id.* at ¶¶ 79, 85, 91, 97, 105, 113, 119, 127, 133, 141, 147, 155, 161, 169, 177, 183.)  In addition to these alleged losses, Plaintiff Markes alleges that, as a result of Sterigenics' conduct, he has "suffered a loss of consortium and was deprived of his wife, Lisa Flanagan's, services and companionship, and he continues to suffer these injuries."  (*Id.* at ¶ 186.)

20.     Given the nature of Plaintiffs' allegations and the lack of any express limitation on the amount of damages sought, the jurisdictional amount requirement is clearly satisfied by their claims alone.

**B.     Complete Diversity of Citizenship Exists.**

        i.     <u>The Parties are Citizens of Different States and No Proper Defendant is a Citizen of Illinois.</u>

21.     Sterigenics is a limited liability company.

22.     Where a party is a limited liability company, "[f]or diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members. . . .  Consequently, an LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the . . . notice of removal was filed, and, if those members have members, the citizenship of those members as well."  *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007); *accord Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003) ("limited liability companies are citizens of every state of which any member is a citizen.").

23.     Where a party is a corporation, "a corporation shall be deemed to be a citizen of every State . . . by which it is has been incorporated and of the State . . . where it has its principal place of business."  28 U.S.C. § 1332(c)(1).

24.     Sterigenics is a Delaware limited liability company whose sole member is Sotera Health LLC.  (Declaration of Tiffany Ross Neumann ("Neumann Decl.") ¶ 2 (attached as Exhibit G).)

25.     Sotera Health LLC is a Delaware limited liability company whose sole member is Sotera Health Holdings, LLC.  (Neumann Decl. ¶ 4.)  Sotera Health Holdings, LLC is a

Delaware limited liability company whose sole member is Sotera Health Topco, Inc. (*Id.* at ¶ 5.)
Sotera Health Topco, Inc. is a Delaware corporation with its headquarters in Broadview Heights,
Ohio. (*Id.* at ¶ 6.) Consequently, Sotera Health LLC is a citizen of Delaware and Ohio.
Therefore, for the purposes of diversity jurisdiction, Defendant Sterigenics is a citizen of
Delaware and Ohio.

26. Plaintiffs have also named GTCR, Bob Novak, and Roger Clark as Defendants.
As explained *infra*, however, GTCR, Bob Novak, and Roger Clark are fraudulently joined as
Defendants to this Action. Fraudulently joined defendants "may be disregarded for purposes of
determining diversity jurisdiction." *Midland Mgmt. Co.*, 132 F. Supp. 3d at 1021.

27. According to the First Amended Complaint, at the time the Action was filed and
at the time of this removal, Plaintiffs were and are not citizens of Delaware or Ohio. Rather,
according to the First Amended Complaint, Plaintiff Flanagan lived in Darien, Illinois from 1981
to 1988, in Willowbrook, Illinois from 1988 to 1998, and she currently lives in Elk Grove
Village, Illinois. (Compl. at ¶ 16.) Meanwhile, Plaintiff Markes has lived at 299 Laurel St., Elk
Grove Village, Illinois for the past 19 years, has an Illinois driver's license, owns property in
Illinois, and has vehicles registered in Illinois. (Exhibit H.) Ultimately, these factual allegations
show that Plaintiffs reside in and intend to remain in Illinois and are domiciled in this state. *See,
e.g.*, *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). Domicile
determines an individual's citizenship for diversity purposes. *Id.* Accordingly, for diversity
purposes, Plaintiffs are citizens of Illinois.

28. Because Plaintiffs are citizens of neither Ohio nor Delaware, complete diversity
of citizenship exists. *Midland Mgmt. Co.*, 132 F. Supp. 3d. at 1017 (removal based on diversity
jurisdiction was proper where properly joined parties were citizens of different states).

ii.     GTCR, Bob Novak, and Roger Clark are Fraudulently Joined.

29.     Plaintiffs assert claims for negligence, willful and wanton conduct, and loss of

consortium against GTCR, Bob Novak, and Roger Clark.  Plaintiffs also assert claims for

ultrahazardous activity/strict liability, civil battery, and public nuisance against GTCR.  These

claims are unsupported by any factual allegations regarding the claimed acts or omissions

committed by GTCR, Bob Novak, and Roger Clark that allegedly caused Plaintiffs' injuries.

30.     "Although a plaintiff is generally free to choose its own forum, a plaintiff 'may

not join an in-state defendant solely for the purposes of defeating federal diversity jurisdiction.'"

*Midland Mgmt. Co.*, 132 F. Supp. at 1021 (quoting *Schwartz v. State Farm Mut. Auto Ins. Co.*,

174 F.3d 875, 878 (7th Cir. 1999)).  "In that case, the defendant is considered fraudulently

joined, and may be disregarded for purposes of determining diversity jurisdiction."  *Id.*

31.     A defendant is fraudulently joined where "there is no reasonable possibility that

the plaintiff could prevail against the [in-state] defendant."  *Tile Unlimited, Inc. v. Blanke Corp*.,

788 F. Supp. 2d 734, 738 (N.D. Ill. 2011) (quotations and citations omitted).  "The court may

consider . . . affidavits in determining whether a party has been fraudulently joined."  *Hernandez

v. Home Depot, U.S.A., Inc.*, No. 05 C 5963, 2006 WL 1647438, at *2 (N.D. Ill. June 5, 2006).

a.     GTCR is Fraudulently Joined.

32.     Naming GTCR as a Defendant is plainly fraudulent given that Plaintiffs fail to

allege that GTCR's acts or omissions actually caused *any* of Plaintiffs' claimed injuries.  Instead,

Plaintiffs rely on GTCR's alleged ownership as being equivalent to alleged evidence of liability.

(Compl. at ¶¶ 21–29.)  Perhaps aware of GTCR's tenuous connection to this case, Plaintiffs

engage in a "smoke and mirrors" approach to make up for the fact that, even by their own

allegations, GTCR is utterly irrelevant to their claims.  Plaintiffs do this by extensively

discussing GTCR's alleged investment strategy and business approach, as well as its alleged initiatives to improve Sterigenics' growth and GTCR's presence on the Sterigenics' board of directors. (*Id.* at ¶¶ 23–25, 28.) Confusingly, Plaintiffs spend over a page of their First Amended Complaint recapping an alleged promotional video featuring a discussion between the GTCR Managing Director and the then-CEO of Sterigenics. (*Id.* at ¶ 26.) Although Plaintiffs claim this video discusses "GTCR's significant involvement and control over Sterigenics," the quotes provided by Plaintiffs belie this assertion. *Id.* Instead the alleged discussion highlights that GTCR does its due diligence to understand the healthcare industry, including researching contract sterilization before partnering with Sterigenics, and GTCR committed resources to acquire a supplier of Sterigenics' products. *Id.* These voluminous and irrelevant allegations regarding GTCR's business relationship with Sterigenics have absolutely nothing to do with Plaintiffs' claims regarding exposure to ethylene oxide emitted by the Willowbrook facility and their assertion that such emissions caused their claims injuries. Indeed, Plaintiffs make no attempt whatsoever to allege any connection between GTCR and the Willowbrook facility, the only Sterigenics facility at issue in this case. Instead Plaintiffs allege that GTCR's ownership of Sterigenics is sufficient to establish liability for Plaintiffs' inhalation of ethylene oxide in Willowbrook. Plaintiffs' allegations do not address, at all, what acts or omissions actually attributable to GTCR potentially caused Plaintiffs' claimed injuries. This failure is fatal to any claim of actual liability against GTCR and plainly reveals this Defendant was fraudulently joined. The most Plaintiffs assert in their allegations against GTCR is that it has an agreeable business relationship with Sterigenics. This is insufficient to apprise GTCR of the nature of the charges against it and to allow it to prepare its defense as required.

33.    Further, Plaintiffs could *never* even state a claim against GTCR as it cannot be held liable for the claims asserted.  Under the direct participant theory of liability for tortious acts of a subsidiary, a parent corporation may be held liable only if "there is sufficient evidence to show that the parent corporation directed or authorized the manner in which an activity is undertaken."  *Grady v. Ocwen Loan Servicing, LLC*, 2012 WL 929928, at *2 (N.D. Ill. Mar. 19, 2012) (citing *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 237 (Ill. 2007)).  In other words, direct participant liability exists only where a parent corporation engages in actions "surpassing the control exercised as a normal incident of ownership."  *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, 2012 WL 1886440, at *10 (N.D. Ill. May 22, 2012) (internal quotation marks omitted).  Within the above-described corporate structure, there are four companies separating GTCR from Sterigenics U.S. LLC.  (Neumann Decl. ¶ 9.)  Notably, the First Amended Complaint makes no attempt to allege facts surpassing that of a normal ownership relationship.  Additionally, however, there are several layers of control separating GTCR's ownership from Sterigenics.  As described above, Sterigenics is a Delaware limited liability company whose sole member is Sotera Health LLC, whose sole member is Sotera Health Holdings, LLC, whose sole member is Sotera Health Topco, Inc. Sotera Health Topco, Inc. is, in turn, owned by Sotera Health Topco Parent, L.P., which is owned by dozens of limited partners.  Among those dozens of limited partners are a few funds indirectly affiliated with GTCR.  (*Id.* at ¶ 8.)  Thus, there are four companies separating GTCR's partial and indirect ownership interest from Sterigenics U.S. LLC.  (*Id.* at ¶ 9.)  Sterigenics, meanwhile, allegedly owns several facilities across different countries, one of which is the Willowbrook facility.  (Compl. at ¶¶ 1, 45, 67, 68.)  As is evidenced by this corporate structure, GTCR does not direct or authorize the manner in which Sterigenics U.S., LLC operates, let alone direct or authorize the activities at the Willowbrook

14

facility.  The only facts alleged demonstrate nothing more than ownership of one limited liability company by another.  This indirect and partial ownership is legally insufficient to ever establish liability for Plaintiffs' claims.

34.     Because Plaintiffs make no specific allegations regarding GTCR's actions or omissions, nor could they ever truthfully make any such allegations, they cannot demonstrate that GTCR owed any legal duty to Plaintiffs or could be otherwise personally liable to them.

35.     Because Plaintiffs have not made ***any*** substantive allegations against GTCR regarding any of their actual claims, there is "no possibility that a plaintiff can state a cause of action against [this] nondiverse defendant[] in state court."  *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993).  Given all of these facts, GTCR has obviously only been added to the First Amended Complaint in a blatant attempt to defeat diversity.

36.     Because no possibility exists, much less any *reasonable* possibility, that Plaintiffs could state ***any*** claim against GTCR, this Defendant was fraudulently joined to this Action.  As such, GTCR's presence as a Defendant should be ignored for purposes of determining diversity jurisdiction.  *See Hernandez*, 2006 WL 1647438, at *2 (removal based on diversity of citizenship was proper where there was "no possibility" that plaintiff could state a cause of action for negligence as alleged in the complaint against the in-state defendant).

b.     Bob Novak and Roger Clark are Fraudulently Joined.

37.     Bob Novak and Roger Clark are also clearly fraudulently joined given the dearth of any factual allegations asserted against them.  Indeed, in the actual body of the First Amended Complaint, Plaintiffs spend just three sentences each on Bob Novak and Roger Clark.  (Compl. at ¶¶ 30, 31.)  Significantly, those three sentences do nothing more than provide their alleged job descriptions.  (*Id.* at ¶ 30 (alleging that Bob Novak "is the Operations Manager at the"

15

Willowbrook facility, "has worked in that capacity since August 2003," and is "responsible for the operation of the facility, coordinating and overseeing all activities in plant operations, and overall plant safety"); *id.* at ¶ 31 (alleging that Roger Clark was "the Maintenance Supervisor at the" Willowbrook facility, "held that position for nearly 30 years from the late 1980s until approximately 2015," and "was responsible for calibrating the internal [ethylene oxide] monitors and overseeing the maintenance activities at the" Willowbrook facility).) Even within these job descriptions, Plaintiffs do not allege that either Defendant had ***any*** control or discretion over the Willowbrook facility's ethylene oxide emissions—the alleged cause of Plaintiffs' injuries.

38.     Other than asserting generalized boilerplate job descriptions for Roger Clark and Bob Novak, Plaintiffs do not mention them again until the First Amended Complaint's claims sections. In those sections, Plaintiffs assert that Roger Clark and Bob Novak are individually liable for their negligence (Counts IX and XI) and willful and wanton conduct (Counts X and XII) claims. Plaintiffs make these unsupported claims even though they asserted *absolutely* no factual allegations regarding either Roger Clark or Bob Novak's acts or omissions that allegedly *actually* caused Plaintiffs' claimed injuries. As such, Roger Clark and Bob Novak were clearly fraudulently joined and their presence as Defendants should be ignored for purposes of determining diversity jurisdiction. *See Hernandez*, 2006 WL 1647438, at *2.

## IV.     FEDERAL QUESTION JURISDICTION.

39.     Federal-question jurisdiction exists where a plaintiff's cause of action "arises under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331. In order to arise under federal law, a claim must either plead a cause of action under federal law or plead a state-law claim that implicates significant federal issues. *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). A state-law claim implicates significant federal

16

issues if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. In other words, a state-law claim may satisfy the "arising under" jurisdictional test if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314); *see also Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.,* 776 F.3d 463, 466 (7th Cir. 2015). A federal issue is substantial if it requires more than the routine application of settled federal law to a particular set of facts. *See Behrens v. BMO Harris Bank , N.A.*, No. 16-CV-09949, 2017 WL 3234373, at *6 (N.D. Ill. July 31, 2017).

## A. Plaintiffs' First Amended Complaint Necessarily Raises a Disputed Issue of Federal Law.

40. The entire substance of Plaintiffs' First Amended Complaint is founded on the federal government's ATSDR report entitled "Evaluation of the Inhalation Carcinogenicity of Ethylene Oxide," which, in turn, used *another* federal government agency's report (the 2016 USEPA IRIS) as the basis for its analysis and findings. In that 2016 report, USEPA changed ethylene oxide's cancer weight-of-evidence descriptor from "probably carcinogenic to humans" to "carcinogenic to humans" and "determined that there is sufficient evidence of a causal relationship between [ethylene oxide] exposure and breast cancer in women." (Ex. B, p. 1, 8, 9.)

41. Nonetheless, at the time the report was released, and at all times before and after the report's release, Sterigenics has been in compliance with all state and federal regulatory emission requirements, most importantly the federal Clean Air Act.

42.     The Clean Air Act, 42 U.S.C. § 7401 *et seq.*, is the primary mechanism through which the federal government manages air emissions from industrial facilities in the United States.  Among many regulatory provisions, the Clean Air Act requires USEPA to identify sources of and set national emission standards for a specific list of nearly 200 hazardous air pollutants.  42 U.S.C. § 7412.  Ethylene oxide is one of those chemicals, and pursuant to that mandate, USEPA has directly regulated ethylene oxide emissions since 1994.  *See* 40 C.F.R. § 63, Subpart 0 (Ethylene Oxide Emissions Standards for Sterilization Facilities); National Emission Standards for Hazardous Air Pollutants for Ethylene Oxide Commercial Sterilization and Fumigation Operations, 59 Fed. Reg. 62585-01 (Dec. 6, 1994).  The emission standards (known as "NESHAPs") are directly applicable to facilities such as Sterigenics and enforceable by USEPA.  40 C.F.R. § 63.368.  If the standards are violated, the United States has the authority to seek civil penalties of up to $97,229 per day and may obtain temporary or permanent injunctive relief.  42 U.S.C. § 7613(b); *see also* Civil Monetary Penalty Inflation Adjustment Rule, 83 Fed. Reg. 1190 (Jan. 10, 2018).

43.     The Clean Air Act also creates a nationally-uniform system of permits, known as "Title V permits," for major industrial sources to ensure that emission standards are identified and met.  40 C.F.R. § 70.1.  USEPA sets the substantive requirements for the Title V permitting program.  It also has the power to authorize individual states to administer the permitting program on USEPA's behalf.  40 C.F.R. § 70 *et seq.*  USEPA has approved Illinois's Title V permitting program, 415 ILCS 5/39.5 (known in Illinois as the Clean Air Act Permit Program ("CAAPP"); Illinois, 66 Fed. Reg. 62946 (Dec. 4, 2001) (Clean Air Act Final Full Approval of the Operating Permits Program).  Pursuant to this grant of authority, IEPA issued Sterigenics a CAAPP permit.

18

44.     Together, the dual regulations set by USEPA and IEPA limit Sterigenics' overall use of ethylene oxide and require most sources of ethylene oxide at the facility to be connected to pollution control devices, which are required to remove at least 99% of the ethylene oxide before it can be emitted to the air, pursuant to the federal NESHAP. 40 C.F.R. § 63.362(a). Sterigenics is in compliance with its CAAPP permit and the federal NESHAP and, in fact, emits far less than the permitted amount of ethylene oxide.

45.     Nonetheless, Plaintiffs argue that Sterigenics breached its duty to Plaintiff Flanagan by, amongst other things, "emitting [ethylene oxide] into the air from its Willowbrook facility," "[b]y using [ethylene oxide] as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being," and "[b]y failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate [ethylene oxide] emissions from its Willowbrook facility." (Compl. at ¶ 77.)

46.     In alleging this duty, Plaintiffs seek to substitute a different standard of care for the carefully-designed emission standard for ethylene oxide that was authorized by Congress, established by USEPA, and implemented in a federally-approved CAAPP permit. Plaintiffs' First Amended Complaint is a direct challenge to both the Clean Air Act's ethylene oxide standards as well as IEPA's implementation of those standards. Plaintiffs ask the state court to ignore these uniform federal standards, and impose new and different standards primarily based on USEPA's IRIS report. Thus, not only do Plaintiffs ask the state court to rewrite a federal regulation, they seek to do that based on a report generated by one federal agency—ATSDR—at the behest of another federal agency—USEPA. Given Plaintiffs' direct challenge to federal standards, regulations and enforcement, as well as their reliance on federal agency opinions to

state a claim, the First Amended Complaint necessarily raises a disputed issue of federal law as to the governing standards for ethylene oxide emissions.

**B.      Plaintiffs' First Amended Complaint Raises a Substantial Federal Issue.**

47.      Plaintiffs' claims are substantial because their resolution is important to the federal system as a whole. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole."). The federal government has a strong interest in ensuring uniformity in national air quality standards. This interest is evidenced by the highly comprehensive and detailed regulatory system the federal government has set forth through the Clean Air Act. Sterigenics is in compliance with this comprehensive and detailed federal regulatory system. Plaintiffs, however, are attempting to bypass this federal system and separately regulate Sterigenics' conduct, conduct that is in conformance with federal and state environmental laws. Curiously, Plaintiffs' proposed regulations are taken from assessments issued by federal bodies—ATSDR and USEPA's IRIS program.

48.      Notably, the standard of care outlined in both the ATSDR report and the IRIS assessment is at odds with the USEPA's federal regulations. Perhaps most troubling is the fact that USEPA created the IRIS risk assessment. Ethylene oxide emitters are receiving inconsistent messages from *the same federal agency*. Thus, Plaintiffs' case presents an issue that cries out for federal, not state, jurisdiction. Overall, the federal government's direct and substantial interest in this matter demonstrates it is an important issue of federal law that belongs in this Court.

**C.      Resolution of this Substantial Federal Issue in This Court Is Not Disruptive.**

49.      Finally, this case does not present issues traditionally regulated by the States. *See Gunn*, 568 U.S. at 264 (denying removal of a legal malpractice case based, in part, on the fact

that States "have a special responsibility for maintaining standards among members of the licensed professions") (internal quotation mark omitted).  Instead, Plaintiffs' case is premised on inconsistent *federal* messages, which the State of Illinois has no particular interest in resolving.  Consequently, Plaintiffs' claims are "capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Id.* at 258.

50.     Because this case meets the arising under standards set by the Supreme Court in *Grable*, this Court has federal question jurisdiction under 28 U.S.C. § 1331.

## V.     THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED.

51.     This Court is the proper venue for this Action, because it is pending in the Circuit Court for Cook County, Illinois, and the United States District Court for the Northern District of Illinois is the federal court district embracing the geographic place where the Action is pending. 28 U.S.C. §§ 93(a)(1), 1441(a), 1446(a).

52.     The original Complaint and summons were served on Sterigenics on October 24, 2018.  Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b).  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (30-day time limit for removal runs from date of formal service of the complaint).

53.     In compliance with 28 U.S.C. § 1446(a), this Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

54.     No consent is needed from Defendants GTCR, Bob Novak, and Roger Clark because they are fraudulently joined.  *Hernandez*, 2006 WL 1647438, at *2 (fraudulently joined defendants do not need to consent to removal); *see also* 28 U.S.C. § 1446(b)(2)(A) (only "defendants who have been properly joined and served must join in or consent to the removal").  Nonetheless, GTCR, Bob Novak, and Roger Clark consent to removal.

55. No Defendant properly joined to this case is a citizen of the State of Illinois, the state where the Action was initially filed. 28 U.S.C. § 1441(b)(2); *Midland Mgmt. Co.*, 132 F. Supp. 3d at 1023–24 (presence of fraudulently joined in-state defendant did not "compromise the parties' complete diversity" and did not violate the forum defendant rule).

56. Pursuant to 28 U.S.C. § 1446(d), Sterigenics will promptly file a removal notice with the Clerk of the Circuit Court of Cook County, Illinois, and will serve written notice of the same upon counsel of record for Plaintiffs.

57. If any questions arise about this removal, Sterigenics respectfully requests the opportunity to present briefing and oral argument in support of removal, and to conduct jurisdictional discovery, if needed.

58. By filing this notice of removal, Sterigenics does not waive, either expressly or implicitly, its rights to assert any defense or other objection that it could have asserted in the Circuit Court of Cook County of Illinois, including, without limitation, those related to personal jurisdiction, inconvenience of the forum, venue, or joinder.

## REQUESTED RELIEF

WHEREFORE, Defendant Sterigenics U.S., LLC ("Sterigenics"), respectfully requests that this Court assume jurisdiction over this action.

Date:   November 1, 2018                    Respectfully submitted,

By:   <u>  /s/ *Maja C. Eaton*                   </u>
            Maja C. Eaton

            Maja C. Eaton
            meaton@sidley.com
            Gerard D. Kelly
            gkelly@sidley.com
            Elizabeth M. Chiarello
            echiarello@sidley.com
            Michael L. Lisak
            mlisak@sidley.com
            Stephanie C. Stern
            sstern@sidley.com
            SIDLEY AUSTIN LLP
            Firm ID No. 42418
            One South Dearborn Street
            Chicago, Illinois  60603
            Telephone: (312) 853-7000
            Facsimile:  (312) 853-7036

            ***ATTORNEYS FOR
            STERIGENICS U.S., LLC, GTCR
            LLC, BOB NOVAK, AND
            ROGER CLARK***

12-Person Jury

FILED
9/26/2018 6:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L010477

**IN THE CIRCUIT COURT OF**
**COOK COUNTY, ILLINOIS**
**LAW DIVISION**

LISA FLANAGAN; and )
TOM MARKES, )
                            )
        Plaintiffs, )
                            )
v. )    Case No.     2018L010477
                            )
STERIGENICS INTERNATIONAL, INC.; )
STERIGENICS INTERNATIONAL LLC; )  **JURY DEMANDED**
STERIGENICS U.S., LLC; BOB NOVAK; )
DANIEL GIBALA; and GTCR, LLC, )
                            )
        Defendants. )

---

**COMPLAINT AT LAW**

---

      Plaintiffs, LISA FLANAGAN and TOM MARKES, by and through counsel, Salvi, Schostok & Pritchard P.C., states as follows for this complaint against Defendants STERIGENICS INTERNATIONAL, INC., STERIGENICS INTERNATIONAL LLC, STERIGENICS U.S. LLC (collectively "Sterigenics"), BOB NOVAK, DANIEL GIBALA, and GTCR, LLC:

## GENERAL ALLEGATIONS

### OVERVIEW

      1.     Since 1984, Sterigenics has been emitting ethylene oxide ("EtO"), a known carcinogen, into the air from its facility located in Willowbrook, Illinois. As a result, for the last 34 years, those who live and work in Willowbrook and the surrounding area have unknowingly been inhaling EtO in the air they breathe on a routine and continuous basis.

1

FILED DATE: 9/26/2018 6:37 PM   2018L010477

FILED DATE: 9/26/2018 6:37 PM   2018L010477

2.      Sterigenics never informed the residents of the Willowbrook community or those who live or work nearby that it systematically emits EtO into the air, nor did Sterigenics warn them that they are routinely and continuously breathing in a known carcinogen.

3.      On or about August 21, 2018, an "Evaluation of Potential Health Impacts for Ethylene Oxide Emissions" prepared by the U.S. Department of Health and Human Services, Agency for Toxic Substances and Disease Registry (hereinafter "ATSDR"), was released to the general public.[1] The ATSDR report was based upon air measurements of EtO collected in May 2018 from 29 discrete locations near the Sterigenics facility in Willowbrook.

4.      Relative to the Sterigenics facility in Willowbrook, the ATSDR concluded that "residents and workers are exposed to elevated airborne EtO concentrations from facility emissions." The ATSDR further concluded that "*an elevated cancer risk exists* for residents and off-site workers in the Willowbrook community surrounding the Sterigenics facility," and that "[t]hese elevated risks *present a public health hazard to these populations*." Among other things, the ATSDR Evaluation "recommends that Sterigenics take *immediate action* to reduce EtO emissions at this facility."

5.      According to the EPA, the upper limit of acceptable cancer risk for air toxics, such as EtO, is 1 in 10 thousand (or 100 in 1 million). In other words, according to the EPA, it "will generally presume that if the risk to that individual is no higher than approximately 1 in 10 thousand, that risk level is considered acceptable . . ."[2]

6.      Based upon the EPA's 2014 National Air Toxics Assessment, there are 106 census tracts in the United States with cancer risk scores greater than the acceptable limits. Most of those

---

[1] https://www.atsdr.cdc.gov/HAC/pha/sterigenic/Sterigenics_International_Inc-508.pdf
[2] https://www.epa.gov/national-air-toxics-assessment/nata-frequent-questions

106 tracts are located in "Cancer Alley," which is a notorious area along the Mississippi River between Baton Rouge and New Orleans with numerous industrial plants.

7.      According to the EPA's 2014 measurements, the immediate area in DuPage County surrounding the Sterigenics facility in Willowbrook, referred to as Tract 17043845902, has a cancer risk of 281.8075 in 1 million—which is nearly three times higher than the EPA's acceptable limits.

8.      To put this into further context, the EPA's 2014 National Air Toxics Assessment documented cancer risks in **76,727** census tracts across the country. The Willowbrook Tract, 1704385902, has the highest cancer risk in Illinois and the nineteenth (19th) highest cancer risk in the United States. In other words, the Willowbrook Tract is in the top 99.98% tracts in terms of cancer risk in the country.

9.      Figure 1, below, identifies the nineteen census tracts in the United States with the highest cancer risk. Twelve are located along Cancer Alley. Five tracts have sterilization plants, such as Sterigenics, that emit massive amounts of EtO. In fact, sterilization plants are almost entirely responsible for causing the extraordinarily high cancer risks in DuPage County, Illinois, Jefferson County, Colorado, and Lehigh County, Pennsylvania.

***

FILED DATE: 9/26/2018 6:37 PM   2018L010477

FILED DATE: 9/26/2018 6:37 PM  2018L010477

**Figure 1**

| | State | EPA Region | County | FIPS | Tract | Population | Total Cancer Risk (per million) |
|---|---|---|---|---|---|---|---|
| 1 | State | EPA Region | County | FIPS | Tract | Population | Total Cancer Risk (per million) |
| 2 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070800 | 2,537 | 1,505.1167 |
| 3 | LA | EPA Region 6 | St. Charles | 22089 | 22089060100 | 1,937 | 808.7227 |
| 4 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070900 | 3,115 | 616.6193 |
| 5 | PA | EPA Region 3 | Lehigh | 42077 | 42077005902 | 1,571 | 596.4609 |
| 6 | CO | EPA Region 8 | Jefferson | 08059 | 08059010902 | 2,310 | 525.5596 |
| 7 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070700 | 4,348 | 511.3240 |
| 8 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095071000 | 2,840 | 490.2785 |
| 9 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095000000 | 45,924 | 413.3152 |
| 10 | WV | EPA Region 3 | Kanawha | 54039 | 54039013400 | 2,222 | 366.6597 |
| 11 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095071100 | 3,398 | 363.1912 |
| 12 | TX | EPA Region 6 | Harris | 48201 | 48201343100 | 4,629 | 348.2016 |
| 13 | PA | EPA Region 3 | Lehigh | 42077 | 42077000101 | 3,661 | 346.5181 |
| 14 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070500 | 6,229 | 329.2657 |
| 15 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070100 | 2,685 | 303.0079 |
| 16 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070300 | 6,258 | 296.3112 |
| 17 | TX | EPA Region 6 | Harris | 48201 | 48201343200 | 4,944 | 296.1831 |
| 18 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070400 | 4,381 | 286.5417 |
| 19 | LA | EPA Region 6 | St. Charles | 22089 | 22089062700 | 4,753 | 284.5145 |
| 20 | IL | EPA Region 5 | DuPage | 17043 | 17043845902 | 3,411 | 281.8075 |

10.     With particular respect to the Willowbrook Tract, 88.98% of the elevated cancer risk is attributed to EtO emissions; and the only facility in the Willowbrook Tract emitting EtO is Sterigenics. As a result, Sterigenics alone is almost entirely responsible for the Willowbrook Tract having the 19th highest cancer risk in the country.

11.     Most troubling is that only one facility in the entire country emits more EtO than the Sterigenics facility in Willowbrook.

12.     The data cited above, specifically in Paragraphs 6 through 11, is based on sampling from 2014. More recent data, however, reveals that the cancer risk in Willowbrook is far higher than previously determined. In May 2018, air samples were taken and analyzed from the area surrounding the Sterigenics facility in Willowbrook. Those samples revealed a **current** cancer risk of 6,400 in 1 million (or 64 in 10 thousand), which is **64 times the acceptable limit**.

FILED DATE: 9/26/2018 6:37 PM   2018L010477

13.     As a direct and proximate result of Sterigenics' emissions of ethylene oxide over the course of the last 34 years, the Willowbrook community has become one of the most toxic and one of the most dangerous communities from a health and well-being standpoint in the entire country. Those who live and work in the Willowbrook area have been victimized by Sterigenics' negligent acts and omissions, as well as its conscious disregard and reckless indifference to human life and the health and well-being of those in the community.

14.     Neither the extent of Sterigenics' EtO emissions nor the impact of those emissions on the health and well-being of those who live and work in the Willowbrook area was known by the general public until the August 21, 2018 release of the ATSDR report and the August 22, 2018 release of EPA's 2014 National Air Toxics Assessment.

## PARTIES

15.     Plaintiff, Lisa Flanagan, is 47 years old and currently lives in Elk Grove Village. From 1981 to 1988, she lived at 17W435 Concord Place, Darien, IL, which is located 1.3 miles from the Sterigenics facility.   From 1988 to 1998, she lived at 10S285 Hampshire Lane E., Willowbrook, IL, which is located 1.8 miles from the Sterigenics facility. She also attended Hinsdale South High School from 1985 to 1989, which is located 1.1 miles from the Sterigenics facility. In 2006, Lisa Flanagan was diagnosed with lymphoma. She did not have notice that her lymphoma was wrongfully caused or that it was caused by Sterigenics' emissions of EtO until the recent ATSDR report was released in August 2018.

16.     Sterigenics International, Inc. and Sterigenics International, LLC provide contract sterilization services across the world. Together they operate 46 facilities in 13 countries.

FILED DATE: 9/26/2018 6:37 PM    2018L010477

17.     In 2011, Sterigenics International, Inc. was purchased for $675 million by the Chicago-based private equity firm, GTCR, LLC. The Chairman of GTCR, LLC in 2011 was Governor Bruce Rauner.

18.     Subsequently, in 2017, Sterigenics International LLC announced that it had changed its parent name to Sotera Health LLC. Sotera Health LLC is also owned in part by GTCR, LLC, Governor Rauner's former equity firm.

19.     Sterigenics U.S., LLC, is a publicly-traded subsidiary of Sotera Health LLC, with its headquarters and principal place of business located at 2015 Spring Road, Suite 650, Oak Brook, Illinois 60523.

20.     At all times relevant for the time period referenced herein, GTCR, LLC, owned, operated, managed, and/or maintained Sterigenics, with its principal place of business at 300 N. LaSalle Street, Suite 5600, Chicago, Cook County, IL.

21.     Sterigenics operates two buildings in Willowbrook. Building One is located at 7775 S. Quincy Street and Building Two is located at 830 Midway Drive.

22.     Sterigenics operates another facility at 711 Cooper Court, Schaumburg, Cook County, Illinois.

23.     Bob Novak is the Operations Manager at the Sterigenics facility in Willowbrook, and has worked in that capacity since August 2003. He is responsible for the operation of the facility, coordinating and overseeing all activities in plant operations, and overall plant safety.

24.     Daniel Gibala, is the Ethylene Oxide Validation Coordinator at the Sterigenics facility in Willowbrook, and has worked in that capacity since July 2013. He is responsible for validating and revalidating the sterilization process at the Sterigenics' facility.

FILED DATE: 9/26/2018 6:37 PM   2018L010477

25.     Upon information and belief, Daniel Gibala is a Cook County resident, residing in Mount Prospect, Illinois.

## VILLAGE OF WILLOWBROOK

26.     The Village of Willowbrook is a suburban community located roughly 20 miles southwest of Chicago. Its population is approximately 8,500. The Village owns and operates over 54 acres of parks on 10 separate sites throughout the Village.

27.     The two Sterigenics buildings in Willowbrook—Building One and Building Two––are both located in a densely populated metropolitan area with 19,271 people living within one mile.

28.     Gower Middle School in Burr Ridge is located 0.7 miles from the Sterigenics facility, and has an enrollment of approximately 400 students. Gower West Elementary School is 0.9 miles from the Sterigenics facility. Conev's Cradle Infant Care, Inc., is a daycare center located 0.7 miles from the Sterigenics facility. Hinsdale South High School, with an enrollment of 1,500 students, is located 1.1 miles from the Sterigenics facility.

29.     The Willowbrook Police Department, with its 23 full-time sworn police officers and three civilian employees, is located a mere 495 feet from the Sterigenics facility. Willowbrook's Village Office and City Hall is located 0.2 miles from the Sterigenics facility.

30.     The Willowbrook Community Park is 0.6 miles from the Sterigenics facility. And there are highly dense residential areas to the immediate west of the Sterigenics facility within 0.3 miles, to the southeast within 0.6 miles, to the southwest within 0.9 miles, to the north within 0.7 miles, to the northeast within 0.8 miles, and to the east within 1.0 mile.

31.     Willowbrook Town Center, which is located 1.1 miles from the Sterigenics facility, has nearly 200,000 square feet of retail stores, restaurants, and other businesses. There are 91,000

FILED DATE: 9/26/2018 6:37 PM 2018L010477

residents within a three mile radius of the Willowbrook Town Center, and an additional 33,000 people employed in the area's 3,000-plus businesses.

32.     Figure 2, below, depicts the area within a 1.5 mile radius of the Stergienics facility.

**Figure 2**



## ETHYLENE OXIDE

33.     The DNA damaging properties of ethylene oxide have been studied since the 1940s, and for more than 40 years it has been consistently recognized as dangerous, toxic, and carcinogenic.

34.     In a 1977 report, the National Institute for Occupational Safety and Health ("NIOSH") concluded that occupational exposure to EtO may increase the frequency of mutations in human populations and recommended that EtO be considered as mutagenic and potentially carcinogenic to humans. Given EtO's carcinogenic potential, the 1977 NIOSH report also recommended that alternative sterilization processes be used whenever available.

FILED DATE: 9/26/2018 6:37 PM   2018L010477

35.     In 1981, NIOSH released a new bulletin focusing on new evidence of carcinogenic, mutagenic, and reproductive hazards associated with EtO. It also reiterated that EtO was a potential occupational carcinogen and reported that no safe levels of EtO exposure have been demonstrated.

36.     In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as *reasonably anticipated to be a human carcinogen.*

37.     In 2000, the U.S. Department of Health and Human Services published the Ninth Annual Report on Carcinogens and revised its classification for EtO to *known to be a human carcinogen.*

38.     The World Health Organization's International Agency for Research on Cancer has also elevated EtO to a Group 1 carcinogen, finding, "Ethylene Oxide is carcinogenic to humans."

39.     In 2016, the U.S. EPA's Integrated Risk Information System (IRIS) increased the cancer potency of EtO by 30 times.

40.     The half-life of ethylene oxide in the atmosphere has been reported in certain circumstances to be two-hundred eleven (211) days. Neither rain nor absorption into aqueous aerosols is capable of removing ethylene oxide from the atmosphere.

41.     Acute exposure to EtO can result in nausea, vomiting, neurological disorders, bronchitis, pulmonary edema, and emphysema.

42.     Chronic exposure to EtO can irritate the eyes, skin, nose, throat, and lungs, and cause harm to the brain and nervous system leading to headaches, nausea, memory loss, and numbness.

43.     Chronic inhalation exposure to EtO can also cause reproductive and developmental impairments. Evidence recognized by the EPA indicates that inhalation exposure to EtO can cause

an increased rate of miscarriages in females. Evidence also indicates that ETO inhalation exposure can cause decreased sperm concentration and testicular degeneration.

44.     Additionally, inhalation exposure to EtO can cause mutations and chromosomal damage that can lead to birth defects and cancer. Even when exposure to EtO diminishes or ceases, the frequency of sister chromatid exchanges (mutations/chromosomal alterations) have been found to remain elevated for at least six months.

45.     Chronic inhalation exposure to EtO also causes cancer. Evidence recognized by the EPA indicates that inhalation exposure to EtO causes lymphatic cancers, leukemia, and lymphoma. There is also evidence that EtO causes brain cancer, lung cancer, and uterine cancer. **As a result, the EPA has concluded that EtO is carcinogenic to humans by the inhalation route of exposure.** The stated confidence in this classification is "HIGH."

### STERIGENICS' OPERATIONS

46.     Sterigenics and its predecessors have been releasing EtO into the air in the Willowbrook area since 1984. The facility stores EtO and sprays it into gas chambers to sterilize medical equipment and pharmaceuticals. Building One of the Sterigenics facility, which was constructed in 1984, holds fifteen gas chambers, while Building Two, which was constructed in 1999, holds four gas chambers. Vents on the gas chambers have been and, upon information and belief, remain uncontrolled. This means that EtO is released from the nineteen gas chambers, through the vents, and into the Willowbrook air without any pollution controls.

47.     The Sterigenics facility operates 24 hours per day, which means toxic, cancerous gas is emitted from the Sterigenics facility on a steady and continuous basis. As a result, EtO is a constant element in the air breathed by those who live and work near the Willowbrook facility.

FILED DATE: 9/26/2018 6:37 PM   2018L010477

FILED DATE: 9/26/2018 6:37 PM   2018L010477

48.     From 1995 through 2016, the reported EtO emissions from the Sterigenics facility are depicted in Figure 3, below:

### Figure 3

| Year | Pounds | Year | Pounds |
|------|--------|------|--------|
| 1995 | 18,213 lbs. | 2006 | 3,985 lbs. |
| 1996 | 22,000 lbs. | 2007 | 3,698 lbs. |
| 1997 | 26,000 lbs. | 2008 | 3,597 lbs. |
| 1998 | 31,000 lbs. | 2009 | 3,429 lbs. |
| 1999 | 1,440 lbs. | 2010 | 6,869 lbs. |
| 2000 | 7,341 lbs. | 2011 | 6,878 lbs. |
| 2001 | 7,848 lbs. | 2012 | 6,811 lbs. |
| 2002 | 6,686 lbs. | 2013 | 5,892 lbs. |
| 2003 | 6,630 lbs. | 2014 | 5,036 lbs. |
| 2004 | 5,039 lbs. | 2015 | 4,706 lbs. |
| 2005 | 2,621 lbs. | 2016 | 4,009 lbs. |

49.     No data on ambient air emissions was kept before 1995. Therefore, from 1984 to 1994, it is not definitively known without discovery from Sterigenics as to how many pounds of EtO Sterigenics released into the air. However, in the few years thereafter, from 1995 to 1998, Sterigenics released an average of 24,203 pounds of EtO into the atmosphere from its Willowbrook facility. It is therefore reasonable to conclude that the pre-1995 emissions of EtO were similar to those from 1995 to 1998.

50.     At all relevant times, Sterigenics has known or should have known that EtO is toxic and dangerous to human health and well-being. In addition, at all relevant times, Sterigenics has known or should have known that EtO is classified as a carcinogen and has been determined to cause various illnesses and ailments including, but not limited to, cancer.

51.     Sterigenics has also been the subject of regulatory and administrative enforcement relative to its EtO emissions. Beginning in 1992, Sterigenics operated a sterilization facility in Zoetermeer, a city in the western Netherlands. The Zoetermeer facility was located in an area with

FILED DATE: 9/26/2018 6:37 PM   2018L010477

residential housing and numerous small business. In 2009, it was determined that Sterigenics had been knowingly releasing too much EtO into the air for a number of years and was penalized. Sterigenics, however, continued with its excessive emissions until it was ultimately shut down in 2010. According to the Public Prosecutor in Zoetermeer, Sterigenics knew of the unauthorized emissions, but failed to act and did not warn local residents about the emissions or the dangers associated therewith.

52.     On or about October 7, 2013, Sterigenics released ethylene glycol (which is made from EtO) into the soil and groundwater at its Willowbrook facility. In addition, on October 21, 2013, Sterigenics reported the uncontrolled release of 30 pounds of ethylene oxide into the air from its Willowbrook facility. The Illinois Attorney General filed a lawsuit against Sterigenics for its water and air pollution and alleged numerous violations of environmental statutes and regulations. Sterigenics entered into a consent order whereby it agreed to pay a $50,000.00 fine.

53.     Notwithstanding Sterignenics' knowledge concerning the dangers of operation, it has been emitting EtO from its facility in Willowbrook on a routine and constant basis for 34 years. Further, notwithstanding Sterigenics' knowledge that chronic inhalation exposure to EtO causes adverse conditions to the eyes, skin, nose, throat, lungs, and nervous system, reproductive and developmental impairments, mutations, chromosomal damage, birth defects, and cancer, it has failed to warn those who live and work in the Willowbrook area that they are being exposed to and breathing in EtO on a routine and constant basis.

<u>COUNT I</u>
**Negligence – Sterigenics International, Inc.**

54.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 53 as if fully set forth as Paragraph 54.

FILED DATE: 9/26/2018 6:37 PM    2018L010477

55.    Sterigenics International, Inc. owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

56.    Sterigenics International, Inc. managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

57.    Sterigenics International, Inc. had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

58.    At all relevant times, Sterigenics International, Inc. knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

59.    Sterigenics International, Inc. breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

    a.    By emitting EtO into the air from its Willowbrook facility;

    b.    By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

    c.    By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

    d.    By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

    e.    By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

    f.    By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

FILED DATE: 9/26/2018 6:37 PM   2018L010477

g.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

h.  By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i.  By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

j.  By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

k.  By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

60.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

61.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

<u>**COUNT II**</u>
**Willful and Wanton Conduct – Sterigenics International, Inc.**

62.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 61 as if fully set forth as Paragraph 62.

63.    Sterigenics International, Inc. had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits a reckless indifference and/or conscious

FILED DATE: 9/26/2018 6:37 PM   2018L010477

disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

64.     At all relevant times, Sterigenics International, Inc. knew that EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

65.     Sterigenics International, Inc. breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a.  By emitting EtO into the air from its Willowbrook facility notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    b.  By placing its own economic interests above the health, safety, and well-being of those who live or work in the Willowbrook community;

    c.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    d.  By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    e.  By emitting EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

    f.  Deliberately concealing its knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

    g.  By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk without warning them of the same.

FILED DATE: 9/26/2018 6:37 PM 2018L010477

66.     As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

67.     As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

## COUNT III
### Ultrahazardous Activity / Strict Liability – Sterigenics International, Inc.

68.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 67 as if fully set forth as Paragraph 68.

69.     Sterigenics International, Inc.'s use and emission of EtO from its Willowbrook facility constitutes an ultrahazardous activity.

70.     Sterigenics International, Inc.'s use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

71.     Sterigenics International, Inc.'s use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

72.     While the activities conducted by Sterigenics International, Inc. are exceedingly dangerous, it offers little to no value to the surrounding community.

FILED DATE: 9/26/2018 6:37 PM    2018L010477

73.    Because the activities of Sterigenics International, Inc. are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

74.    As a direct and proximate result of Sterigenics International, Inc.'s ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

75.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

## COUNT IV
### Civil Battery – Sterigenics International, Inc.

76.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 75 as if fully set forth as Paragraph 76.

77.    At all relevant times, Sterigenics International, Inc. knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

78.    Notwithstanding this knowledge, Sterigenics International, Inc. caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

79.    Plaintiff's contact with EtO was offensive and harmful.

80.    Sterigenics International, Inc. intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

81.    Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

17

82. As a direct and proximate result of Sterigenics International, Inc.'s emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

83. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

## COUNT V
### Public Nuisance – Sterigenics International, Inc.

84. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 83 as if fully set forth as Paragraph 84.

85. The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

86. Sterigenics International, Inc.'s use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics International, Inc. has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer.

87. Sterigenics International, Inc.'s use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

18

FILED DATE: 9/26/2018 6:37 PM 2018L010477

88.     As a result of Sterigenics International, Inc.'s use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

89.     As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics International Inc. in an amount be determined by a trier of fact.

### COUNT VI
### Negligence – Sterigenics International LLC

90.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 89 as if fully set forth as Paragraph 90.

91.     Sterigenics International LLC owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

92.     Sterigenics International LLC managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

93.     Sterigenics International LLC had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

94.     At all relevant times, Sterigenics International LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

19

FILED DATE: 9/26/2018 6:37 PM    2018L010477

95.    Sterigenics International LLC breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

a.    By emitting EtO into the air from its Willowbrook facility;

b.    By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

c.    By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

d.    By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

e.    By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

f.    By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

g.    By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

h.    By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i.    By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

j.    By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

k.    By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

96.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

FILED DATE: 9/26/2018 6:37 PM   2018L010477

97.     As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact.

### COUNT VII
**Willful and Wanton Conduct – Sterigenics International LLC**

98.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 97 as if fully set forth as Paragraph 98.

99.     Sterigenics International LLC had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits a reckless indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

100.    At all relevant times, Sterigenics International LLC knew that EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

101.    Sterigenics International LLC breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a.  By emitting EtO into the air from its Willowbrook facility notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    b.  By placing its own economic interests above the health, safety, and well-being of those who live or work in the Willowbrook community;

    c.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO

FILED DATE: 9/26/2018 6:37 PM    2018L010477

notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

d. By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

e. By emitting EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

f. Deliberately concealing its knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

g. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk without warning them of the same.

102. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

103. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact.

## COUNT VIII
### Ultrahazardous Activity / Strict Liability – Sterigenics International LLC

104. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 103 as if fully set forth as Paragraph 104.

FILED DATE: 9/26/2018 6:37 PM   2018L010477

105.     Sterigenics International LLC's use and emission of EtO from its Willowbrook facility constitutes an ultra-hazardous activity.

106.     Sterigenics International LLC's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

107.     Sterigenics International LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

108.     While the activities conducted by Sterigenics International LLC are exceedingly dangerous, it offers little to no value to the surrounding community.

109.     Because the activities of Sterigenics International LLC are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

110.     As a direct and proximate result of Sterigenics International LLC's ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

111.     As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact.

23

FILED DATE: 9/26/2018 6:37 PM  2018L010477

## COUNT IX
### Civil Battery – Sterigenics International LLC

112.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 111 as if fully set forth as Paragraph 112.

113.    At all relevant times, Sterigenics International LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

114.    Notwithstanding this knowledge, Sterigenics International LLC caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

115.    Plaintiff's contact with EtO was offensive and harmful.

116.    Sterigenics International LLC intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

117.    Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

118.    As a direct and proximate result of Sterigenics International LLC's emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

119.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact.

FILED DATE: 9/26/2018 6:37 PM   2018L010477

## COUNT X
**Public Nuisance – Sterigenics International LLC**

120.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 119 as if fully set forth as Paragraph 1120.

121.    The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

122.    Sterigenics International LLC's use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics International LLC has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing an substantially elevated risk of cancer.

123.    Sterigenics International LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

124.    As a result of Sterigenics International LLC's use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

125.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics International LLC in an amount be determined by a trier of fact

FILED DATE: 9/26/2018 6:37 PM   2018L010477

## COUNT XI
### Negligence – Sterigenics U.S., LLC

126.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 125 as if fully set forth as Paragraph 126.

127.    Sterigenics U.S., LLC owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

128.    Stergenics U.S., LLC managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

129.    Sterigenics U.S., LLC had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

130.    At all relevant times, Sterigenics U.S., LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

131.    Sterigenics U.S., LLC breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

    a.   By emitting EtO into the air from its Willowbrook facility;

    b.   By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

    c.   By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

    d.   By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

    e.   By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

FILED DATE: 9/26/2018 6:37 PM    2018L010477

f.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

g.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

h.  By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i.  By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

j.  By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

k.  By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

132.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

133.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT XII
### Willful and Wanton Conduct – Sterigenics U.S., LLC

134.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 133 as if fully set forth as Paragraph 134.

FILED DATE: 9/26/2018 6:37 PM  2018L010477

135.    Sterigenics U.S., LLC had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits a reckless indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

136.    At all relevant times, Sterigenics U.S., LLC knew that EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

137.    Sterigenics U.S., LLC breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

  a.  By emitting EtO into the air from its Willowbrook facility notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

  b.  By placing its own economic interests above the health, safety, and well-being of those who live or work in the Willowbrook community;

  c.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

  d.  By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

  e.  By emitting EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

  f.  Deliberately concealing its knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

28

FILED DATE: 9/26/2018 6:37 PM 2018L010477

g. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk without warning them of the same.

138.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

139.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT XIII
### Ultrahazardous Activity / Strict Liability – Sterigenics U.S., LLC

140.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 139 as if fully set forth as Paragraph 140.

141.    Sterigenics U.S., LLC's use and emission of EtO from its Willowbrook facility constitutes an ultra-hazardous activity.

142.    Sterigenics U.S., LLC's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

143.    Sterigenics U.S., LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

FILED DATE: 9/26/2018 6:37 PM   2018L010477

144.    While the activities conducted by Sterigenics U.S., LLC are exceedingly dangerous, it offers little to no value to the surrounding community.

145.    Because the activities of Sterigenics U.S., LLC are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

146.    As a direct and proximate result of Sterigenics U.S., LLC's ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

147.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

**COUNT XIV**
**Civil Battery – Sterigenics U.S., LLC**

148.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 147 as if fully set forth as Paragraph 148.

149.    At all relevant times, Sterigenics U.S., LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

150.    Notwithstanding this knowledge, Sterigenics U.S., LLC caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

151.    Plaintiff's contact with EtO was offensive and harmful.

FILED DATE: 9/26/2018 6:37 PM 2018L010477

152.     Sterigenics U.S., LLC intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

153.     Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

154.     As a direct and proximate result of Sterigenics U.S., LLC's emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

155.     As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT XV
### Public Nuisance – Sterigenics U.S., LLC

156.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 155 as if fully set forth as Paragraph 156.

157.     The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

158.     Sterigenics U.S., LLC's use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics U.S., LLC has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing an substantially elevated risk of cancer.

FILED DATE: 9/26/2018 6:37 PM 2018L010477

159.     Sterigenics U.S., LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

160.     As a result of Sterigenics U.S., LLC's use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

161.     As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT XVI
### Negligence – GTCR, LLC

162.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 161 as if fully set forth as Paragraph 162.

163.     GTCR, LLC owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

164.     GTCR, LLC managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

165.     GTCR, LLC had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

32

FILED DATE: 9/26/2018 6:37 PM    2018L010477

166.    At all relevant times, GTCR, LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

167.    GTCR, LLC breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

l.  By emitting EtO into the air from its Willowbrook facility;

m.  By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

n.  By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

o.  By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

p.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

q.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

r.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

s.  By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

t.  By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

u.  By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

v.  By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

33

FILED DATE: 9/26/2018 6:37 PM 2018L010477

168.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

169.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

## COUNT XVII
### Willful and Wanton Conduct – GTCR, LLC

170.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 169 as if fully set forth as Paragraph 170.

171.    GTCR, LLC had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits a reckless indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

172.    At all relevant times, GTCR, LLC knew that EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

173.    GTCR, LLC breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a. By emitting EtO into the air from its Willowbrook facility notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

FILED DATE: 9/26/2018 6:37 PM   2018L010477

b.   By placing its own economic interests above the health, safety, and well-being of those who live or work in the Willowbrook community;

c.   By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

d.   By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

e.   By emitting EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

f.   Deliberately concealing its knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

g.   By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk without warning them of the same.

174.   As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

175.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

FILED DATE: 9/26/2018 6:37 PM   2018L010477

## COUNT XVIII
### Ultrahazardous Activity / Strict Liability – GTCR, LLC

176.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 175 as if fully set forth as Paragraph 176.

177.    GTCR, LLC's use and emission of EtO from its Willowbrook facility constitutes an ultrahazardous activity.

178.    GTCR, LLC's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

179.    GTCR, LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

180.    While the activities conducted by GTCR, LLC are exceedingly dangerous, it offers little to no value to the surrounding community.

181.    Because the activities of GTCR, LLC are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

182.    As a direct and proximate result of GTCR, LLC's ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

183.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

FILED DATE: 9/26/2018 6:37 PM 2018L010477

## COUNT XIX
### Civil Battery – GTCR, LLC

184.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 183 as if fully set forth as Paragraph 184.

185.    At all relevant times, GTCR, LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

186.    Notwithstanding this knowledge, GTCR, LLC caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

187.    Plaintiff's contact with EtO was offensive and harmful.

188.    GTCR, LLC intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

189.    Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

190.    As a direct and proximate result of GTCR, LLC's emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

191.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

FILED DATE: 9/26/2018 6:37 PM   2018L010477

## COUNT XX
### Public Nuisance – GTCR, LLC

192.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 191 as if fully set forth as Paragraph 192.

193.    The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

194.    GTCR, LLC's use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of GTCR, LLC has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer.

195.    GTCR, LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

196.    As a result of GTCR, LLC's use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

197.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

FILED DATE: 9/26/2018 6:37 PM   2018L010477

## COUNT XXI
### Negligence – Bob Novak

198.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 197 as if fully set forth as Paragraph 198.

199.    Since August 2003, Bob Novak has been the Operations Manager at the Sterigenics facility in Willowbrook.

200.    In that capacity, Bob Novak has been responsible for the operation of the facility, coordinating and overseeing all activities in plant operations, and overall plant safety.

201.    At all relevant times, Bob Novak had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding the Sterigenics facility in Willowbrook.

202.    At all relevant times, Bob Novak knew or should have known that the EtO gas emitting from the Sterigenics facility in Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

203.    Bob Novak breached her duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

   a.  By emitting and/or permitting emissions of EtO into the air from the Sterigenics facility in Willowbrook;

   b.  By emitting and/or permitting emissions of excessive, unnecessary, and/or dangerous volumes of EtO into air from the Sterigenics facility in Willowbrook;

   c.  By using EtO as part of Sterigenics' sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

   d.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

39

FILED DATE: 9/26/2018 6:37 PM   2018L010477

e.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

f.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that Sterigenics was emitting a known carcinogen into the air from its facility in Willowbrook;

g.  By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

h.  By failing to adequately study and test the effect of Sterigenics' EtO emissions from its Willowbrook facility on the quality of air;

i.  By failing to adequately study and test the effect of Sterigenics' EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

j.  By subjecting Plaintiff and those who live and work nearby the Sterigenics facility in Willowbrook to an elevated cancer risk.

204.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

205.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against BOB NOVAK in an amount be determined by a trier of fact.

## COUNT XXII
### Willful and Wanton Conduct – Bob Novak

206.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 205 as if fully set forth as Paragraph 206.

FILED DATE: 9/26/2018 6:37 PM    2018L010477

207.    At all relevant times, Bob Novak had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits a reckless indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

208.    At all relevant times, Bob Novak knew that EtO gas emitting from Sterigenics Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

209.    Bob Novak breached her duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a.  By emitting and/or permitting emissions of EtO into the air from Sterigenics Willowbrook facility notwithstanding her knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    b.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding her knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    c.  By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding her knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    d.  By emitting and/or permitting emissions of EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

    e.  Deliberately concealing her knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

    f.  By subjecting Plaintiff and those who live and work nearby Sterigenics Willowbrook facility to an elevated cancer risk without warning them of the same.

41

FILED DATE: 9/26/2018 6:37 PM   2018L010477

210.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

211.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against BOB NOVAK in an amount be determined by a trier of fact.

<u>COUNT XXIII</u>
**Negligence – Daniel Gibala**

212.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 211 as if fully set forth as Paragraph 212.

213.    Since July 2013, Daniel Gibala has been the Ethylene Oxide Validation Coordinator at the Sterigenics facility in Willowbrook.

214.    In that capacity, Daniel Gibala has been responsible for validating and revalidating the sterilization process at the Sterigenics facility in Willowbrook, which would include testing and analysis to determine the nature and extent of EtO emissions.

215.    At all relevant times, Daniel Gibala had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding the Sterigenics facility in Willowbrook.

FILED DATE: 9/26/2018 6:37 PM    2018L010477

216. At all relevant times, Daniel Gibala knew or should have known that the EtO gas emitting from the Sterigenics facility in Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

217. Daniel Gibala breached her duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

a. By permitting emissions of EtO into the air from the Sterigenics facility in Willowbrook;

b. By permitting emissions of excessive, unnecessary, and/or dangerous volumes of EtO into air from the Sterigenics facility in Willowbrook;

c. By using EtO as part of Sterigenics' sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

d. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

e. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

f. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that Sterigenics was emitting a known carcinogen into the air from its facility in Willowbrook;

g. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

h. By failing to adequately study and test the effect of Sterigenics' EtO emissions from its Willowbrook facility on the quality of air;

i. By failing to adequately study and test the effect of Sterigenics' EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

j. By subjecting Plaintiff and those who live and work nearby the Sterigenics facility in Willowbrook to an elevated cancer risk.

218.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

219.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against DANIEL GIBALA in an amount be determined by a trier of fact.

## COUNT XXIV
### Willful and Wanton Conduct – Daniel Gibala

220.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 219 as if fully set forth as Paragraph 220.

221.    At all relevant times, Daniel Gibala had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits a reckless indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

222.    At all relevant times, Daniel Gibala knew that EtO gas emitting from Sterigenics Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

223.    Daniel Gibala breached her duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a. By permitting emissions of EtO into the air from Sterigenics
       Willowbrook facility notwithstanding her knowledge that EtO is toxic,

44

FILED DATE: 9/26/2018 6:37 PM   2018L010477

poisonous, and causes adverse medical issues including, but not limited to, cancer;

b.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding her knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

c.  By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding her knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

d.  By permitting emissions of EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

e.  Deliberately concealing her knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

f.  By subjecting Plaintiff and those who live and work nearby Sterigenics Willowbrook facility to an elevated cancer risk without warning them of the same.

224.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

225.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against DANIEL GIBALA in an amount be determined by a trier of fact.

FILED DATE: 9/26/2018 6:37 PM   2018L010477

## COUNT XXV
### Loss of Consortium – All Defendants

226.    Plaintiff, Tom Markes, incorporates by reference all allegations contained in Paragraphs 1 through 225 as if fully set forth as Paragraph 226.

227.    Plaintiff, Tom Markes, was and remains the lawful husband of Lisa Flanagan.

228.    As a direct and proximate result of the aforementioned negligent and willful and wanton acts and/or omissions of Defendants, Plaintiff, Tom Markes, suffered a loss of consortium and was deprived of his wife, Lisa Flanagan's, services and companionship, and he continues to suffer these injuries.

WHEREFORE Plaintiff, Tom Markes, respectfully requests that judgment be entered in his favor and against all Defendants in an amount to be determined by a trier of fact.

## COUNT XXVI
### Injunctive Relief – All Defendants

229.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 228 as if fully set forth as Paragraph 229.

230.    Defendants have a duty to not pollute the air surrounding the Sterigenics facility in Willowbrook with EtO.

231.    Defendants have breached their duty by emitting EtO from Sterigenics Willowbrook facility on a routine and continuous basis.

232.    Defendants' current emissions of EtO from the Sterigenics facility in Willowbrook have caused that particular tract to have a cancer risk 64 times greater than that accepted by the EPA.

233.    There is no adequate remedy at law sufficient to account for Defendants' continuing EtO emissions.

FILED DATE: 9/26/2018 6:37 PM  2018L010477

WHEREFORE, Plaintiff, Lisa Flanagan, respectfully requests that this Court issue an injunction as follows:

    a. ordering Defendants to immediately cease using ethylene oxide in Sterigenics Willowbrook facility;

    b. alternatively, ordering Defendants to modify its operations such that the cancer risk in Willowbrook resulting from ethylene oxide emissions is at or under the acceptable level of risk of 1 in 10 ten thousand (or 100 in 1 million).

Respectfully Submitted,

SALVI, SCHOSTOK & PRITCHARD P.C.

By:   /s Patrick A. Salvi           
One of the Attorneys for the Plaintiffs

Patrick A. Salvi (psalvi@salvilaw.com)
Jeffery J. Kroll (jkroll@salvilaw.com)
Aaron D. Boeder (aboeder@salvilaw.com)
Andrew J. Burkavage (aburkavage@salvilaw.com)
Heidi L. Wickstrom (hwickstrom@salvilaw.com)
SALVI, SCHOSTOK & PRITCHARD P.C.
Firm No. 34560
161 North Clark Street, Suite 4700
Chicago, IL 60601
312-372-1227
312-372-3720 (fax)

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (06/28/18) CCG 0001 |

FILED
9/26/2018 6:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L010477

FILED DATE: 9/26/2018 6:37 PM  2018L010477

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

LISA FLANAGAN and TOM MARKES,

(Name all parties)

v.

STERIGENICS INTERNATIONAL, INC.; STERIGENICS
INTERNATIONAL LLC; STERIGENICS U.S., LLC; BOB NOVAK;
DANIEL GIBALA; and GTCR, LLC

Case No. 2018L010477

PLEASE SERVE
Sterigenics U.S., LLC
c/o CT Corporation, Registered Agent
208 S. LaSalle Street, Suite 814
Chicago, Illinois 60604

☒ SUMMONS ☐ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.**

9/26/2018 6:37 PM DOROTHY BROWN

Witness: _____

Atty. No.: 34560

Atty Name: Salvi, Schostok & Pritchard, PC

Atty. for: Plaintiff

Address: 161 North Clark Street, Suite 4700

City: Chicago     State: IL

Zip: 60601

Telephone: 312-372-1227

Primary Email: psalvi@salvilaw.com

Secondary Email: aboeder@salvilaw.com

Tertiary Email: aburkavage@salvilaw.com

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois     cookcountyclerkofcourt.org**

2120 - Served          2121 - Served
2220 - Not Served      2221 - Not Served
2320 - Served By Mail  2321 - Served By Mail
2420 - Served By Publication  2421 - Served By Publication
Summons - Alias Summons                    (06/28/18) CCG 0001

FILED
9/26/2018 6:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L010477

FILED DATE: 9/26/2018 6:37 PM  2018L010477

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

LISA FLANAGAN and TOM MARKES,

_____
                         (Name all parties)    Case No. _____

v.

STERIGENICS INTERNATIONAL, INC.; STERIGENICS
INTERNATIONAL LLC; STERIGENICS U.S., LLC; BOB NOVAK;
DANIEL GIBALA; and GTCR, LLC

PLEASE SERVE
Bob Novak
7775 S. Quincy Street
Willowbrook, Illinois 60527

### ☒ SUMMONS   ☐ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.**

Witness: _____9/26/2018 6:37 PM DOROTHY BROWN_____

Atty. No.: ___34560___

Atty Name: ___Salvi, Schostok & Pritchard, PC___

Atty. for: ___Plaintiff___

Address: ___161 North Clark Street, Suite 4700___

City: ___Chicago___    State: ___IL___

Zip: ___60601___

Telephone: ___312-372-1227___

Primary Email: ___psalvi@salvilaw.com___

Secondary Email: ___aboeder@salvilaw.com___

Tertiary Email: ___aburkavage@salvilaw.com___

_____
DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois   cookcountyclerkofcourt.org**

Page 1 of 2

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 9/26/2018 6:37 PM   2018L010477

X   Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

**Daley Center Divisions/Departments**

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

**CASE NUMBER:** 2018L010477    **SHERIFF NUMBER:** 02896261    **MULT. SER.:** 5    **DOC. TYPE:** LAW

**DIE DATE:** 10/19/2018    **RECEIVED DATE:** 09/27/2018    **FILED DATE:** 09/26/2018    **DIST:** 606

| | |
|---|---|
| **DEFENDANT:** GTCR LLC | **PLAINTIFF:** FLANAGAN, LISA AND TOM MARKES |
| **ADDRESS:** 200 W ADAMS | **ATTORNEY:** SALVI & SCHOSTOK AND PRITCHARD PC |
| **CITY:** CHICAGO | **ADDRESS:** 200 W WASHINGTON#1600 |
| **STATE:** IL   **ZIP CODE:** 60606 | **CITY:** CHICAGO |
| **ATTACHED FEE AMT:** | **STATE:** IL   **ZIP CODE:** 60602 |

**SERVICE INFORMATION:** RM 801 C/O NRAI CORPORATE SERVICES RA

**I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:**

☐ **(1) PERSONAL SERVICE:** BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

☐ **(2) SUBSTITUTE SERVICE:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE DAY OF _ 20.

☐ **(3) UNKNOWN OCCUPANTS:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

☑ **(4) CORP/CO/BUS/PART:** BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION ____COMPANY____BUSINESS _____ PARTNERSHIP ___

☐ **(5) PROPERTY RECOVERED:** NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

☐ **(6) S.O.S/D.O.I.:** BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

☐ **(7) CERTIFIED MAIL**

**** COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT ****

**(8)** AND BY MAILING ON THE ___ DAY OF _____ 20 _____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATON SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

**THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:**

☐ (01) NO CONTACT    ☐ (05) WRONG ADDRESS    ☐ (09) DECEASED
☐ (02) MOVED    ☐ (06) NO SUCH ADDRESS    ☐ (10) NO REGISTED AGENT
☐ (03) EMPTY LOT    ☐ (07) EMPLOYER REFUSAL    ☐ (11) OUT OF COOK COUNTY
☐ (04) NOT LISTED    ☐ (08) CANCELLED BY PLAINTIFF ATTY    ☐ (12) OTHER REASON (EXPLAIN)

**EXPLANATION:**

**WRIT SERVED ON:** K STARKS

**ATTEMPTED SERVICES**

**SEX:** F   **RACE:** BL   **AGE:** 40

**THIS** 03 **DAY OF** Octobe 20 18
r

Date    Time    Star #

**TIME:** 12:00 PM

THOMAS J. DART,

SHERIFF, BY: /S/ THOMAS, JOSHUA D/S #11069 , DEPUTY



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

| | | | |
|---|---|---|---|
| **CASE NUMBER:** 2018L010477 | **SHERIFF NUMBER:** 02896261 | **MULT. SER.:** 5 | **DOC. TYPE:** LAW |
| **DIE DATE:** 10/19/2018 | **RECEIVED DATE:** 09/27/2018 | **FILED DATE:** 09/26/2018 | **DIST:** 606 |

Date                    Time                    Star #



### SHERIFF'S OFFICE OF COOK COUNTY
### AFFIDAVIT OF SERVICE

**CASE NUMBER:** 2018L010477 **SHERIFF NUMBER:** 02896262 **MULT. SER.:** 5 **DOC. TYPE:** LAW

**DIE DATE:** 10/19/2018 **RECEIVED DATE:** 09/27/2018 **FILED DATE:** 09/26/2018 **DIST:** 604

| | |
|---|---|
| **DEFENDANT:** STERIGENICS INTERNATIONAL INC | **PLAINTIFF:** FLANAGAN, LISA AND TOM MARKES |
| **ADDRESS:** 208 S LASALLE | **ATTORNEY:** SALVI & SCHOSTOK AND PRITCHARD PC |
| **CITY:** CHICAGO | **ADDRESS:** 208 W WASHINGTON#1600 |
| **STATE:** IL **ZIP CODE:** 60604 | **CITY:** CHICAGO |
| **ATTACHED FEE AMT:** | **STATE:** IL **ZIP CODE:** 60602 |

**SERVICE INFORMATION:** RM 801 C/O CT CORPORATION SYSTEM RA

## I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:

☐ **(1) PERSONAL SERVICE:** BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

☐ **(2) SUBSTITUTE SERVICE:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE DAY OF _ 20.

☐ **(3) UNKNOWN OCCUPANTS:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

☑ **(4) CORP/CO/BUS/PART:** BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION ____COMPANY____BUSINESS _____ PARTNERSHIP ___

☐ **(5) PROPERTY RECOVERED:** NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

☐ **(6) S.O.S/D.O.I.:** BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

☐ **(7) CERTIFIED MAIL**
**** COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT ****

☐ **(8)** AND BY MAILING ON THE ___ DAY OF _____ 20 _____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATON SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

## THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:

| | | | | | |
|---|---|---|---|---|---|
| ☐ | (01) NO CONTACT | ☐ | (05) WRONG ADDRESS | ☐ | (09) DECEASED |
| ☐ | (02) MOVED | ☐ | (06) NO SUCH ADDRESS | ☐ | (10) NO REGISTED AGENT |
| ☐ | (03) EMPTY LOT | ☐ | (07) EMPLOYER REFUSAL | ☐ | (11) OUT OF COOK COUNTY |
| ☐ | (04) NOT LISTED | ☐ | (08) CANCELLED BY PLAINTIFF ATTY | ☐ | (12) OTHER REASON (EXPLAIN) |

**EXPLANATION:**

**WRIT SERVED ON:** DERRICK HACKETT

**ATTEMPTED SERVICES**

**SEX:** M **RACE:** BL **AGE:** 30

**THIS** 02 **DAY OF** Octobe 20 18
r

| Date | Time | Star # |
|---|---|---|

**TIME:** 11:32 AM

THOMAS J. DART,
SHERIFF, BY: /S/ HALVORSON, KYLE #10446 , DEPUTY



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

**CASE NUMBER:** 2018L010477    **SHERIFF NUMBER:** 02896262    **MULT. SER.:** 5    **DOC. TYPE:** LAW

**DIE DATE:** 10/19/2018    **RECEIVED DATE:** 09/27/2018    **FILED DATE:** 09/26/2018    **DIST:** 604

| Date | Time | Star # |
|------|------|--------|

Firm I.D. 34560

FILED
9/26/2018 6:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L010477

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| LISA FLANAGAN; and TOM MARKES | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2018L010477 |
| | ) |
| STERIGENICS INTERNATIONAL, INC.; | ) **JURY DEMANDED** |
| STERIGENICS INTERNATIONAL LLC; | ) |
| STERIGENICS U.S., LLC; BOB NOVAK; | ) |
| DANIEL GIBALA; and GTCR, LLC, | ) |
| | ) |
| Defendants. | ) |

<u>**AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(B)**</u>

Pursuant to Supreme Court Rule 222(B), counsel for the above-named Plaintiff certifies that the Plaintiff seeks money damages in excess of $50,000.00.

Respectfully submitted,

SALVI, SCHOSTOK & PRITCHARD P.C.

By: _____
One of the Attorneys for the Plaintiff

Patrick A. Salvi (psalvi@salvilaw.com)
Jeffery J. Kroll (jkroll@salvilaw.com)
Aaron D. Boeder (aboeder@salvilaw.com)
Andrew J. Burkavage (aburkavage@salvilaw.com)
Heidi L. Wickstrom (hwickstrom@salvilaw.com)
SALVI, SCHOSTOK & PRITCHARD P.C.
Firm No. 34560
161 North Clark Street, Suite 4700
Chicago, IL 60601
312-372-1227
312-372-3720 (fax)

FILED DATE: 9/26/2018 6:37 PM   2018L010477

FILED DATE: 10/26/2018 3:10 PM  2018L010477

Firm I.D. 34560

FILED
10/26/2018 3:10 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L010477

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| LISA FLANAGAN and<br>TOM MARKES,<br><br>            Plaintiffs,<br><br>    v.<br><br>STERIGENICS INTERNATIONAL, INC.;<br>STERIGENICS INTERNATIONAL LLC;<br>STERIGENICS U.S., LLC; BOB NOVAK;<br>DANIEL GIBALA; and GTCR, LLC,<br><br>            Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>Case No. 2018 L 010477 |

### PLAINTIFFS' ROUTINE MOTION FOR LEAVE TO FILE
### FIRST AMENDED COMPLAINT AT LAW *INSTANTER*

NOW COME the Plaintiffs, LISA FLANAGAN and TOM MARKES, by and through

counsel, SALVI, SCHOSTOK & PRITCHARD, P.C. and hereby moves this Honorable Court for

leave to file their First Amended Complaint at Law *instanter*. In support thereof, Plaintiffs state as

follows:

      1.     This matter arises out of injuries caused by the Defendants' alleged emissions of

ethylene oxide, a known carcinogen, into the air from the Sterigenics facility located in

Willowbrook, Illinois.

      2.     On September 26, 2018, Plaintiffs filed their Complaint at Law alleging the conduct

of the Defendants caused Plaintiffs' injuries.

      3.     Plaintiffs now move this Honorable Court for Leave to file a First Amended

Complaint voluntarily dismissing Defendants, STERIGENICS INTERNATIONAL, INC.,

STERIGENICS INTERNATIONAL LLC, and DANIEL GIBALA without prejudice pursuant to

FILED DATE: 10/26/2018 3:10 PM    2018L010477

735 ILCS 5/2-1009.  As of the date of the filing of this Routine Motion for Leave to Amend, none of these Defendants have filed a motion that could result in the final disposition of the cause.

4.    Plaintiffs further move this Honorable Court for Leave to file a First Amended Complaint adding ROGER CLARK as a named Defendant, with Summons to Issue.  Attached hereto as **Exhibit A** is Plaintiffs' proposed First Amended Complaint at Law.

WHEREFORE, Plaintiffs LISA FLANAGAN and TOM MARKES respectfully request that they be given leave to file a First Amended Complaint at Law *instanter*, voluntarily dismissing Defendants, STERIGENICS INTERNATIONAL, INC., STERIGENICS INTERNATIONAL LLC, and DANIEL GIBALA, without prejudice pursuant to 735 ILCS 5/2-1009, and adding a new Defendant, ROGER CLARK.

Respectfully Submitted,

SALVI, SCHOSTOK & PRITCHARD P.C.

By:   /s Patrick A. Salvi
One of the Attorneys for the Plaintiffs

Patrick A. Salvi (psalvi@salvilaw.com)
Jeffery J. Kroll (jkroll@salvilaw.com)
Andrew J. Burkavage (aburkavage@salvilaw.com)
Heidi L. Wickstrom (hwickstrom@salvilaw.com)
John L. Mennie (jmennie@salvilaw.com)
SALVI, SCHOSTOK & PRITCHARD P.C.
161 North Clark Street, Suite 4700
Chicago, IL 60601
312-372-1227
312-372-3720 (fax)
Firm No.: 34560

FILED
10/26/2018 3:10 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018L010477

FILED DATE: 10/26/2018 3:10 PM   2018L010477

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |
|---|---|---|
| LISA FLANAGAN; and TOM MARKES; | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2018 L 010477 |
| STERIGENICS U.S., LLC; BOB NOVAK; ROGER CLARK; and GTCR, LLC; | ) ) ) ) | **JURY DEMANDED** |
| Defendants. | ) ) ) | |

---

## FIRST AMENDED COMPLAINT AT LAW

---

Plaintiffs, LISA FLANAGAN and TOM MARKES, by and through counsel, Salvi, Schostok & Pritchard P.C., states as follows for her complaint against Defendants STERIGENICS U.S. LLC ("Sterigenics"), BOB NOVAK, ROGER CLARK, and GTCR, LLC:



EXHIBIT

A

1

FILED DATE: 10/26/2018 3:10 PM   2018L010477

## INTRODUCTION

For decades, tens of thousands of people have lived in Willowbrook, Burr Ridge, Darien, and Hinsdale, the quiet suburbs of Cook and DuPage Counties Willowbrook, Burr Ridge, Darien, and Hinsdale with the false belief that they had found a sanctuary from the busy streets of Chicago. Just 25 miles southwest of Chicago, the third largest city in America, the area is a disaster zone. It is America's Chernobyl. In 1984, a company called Sterigenics infiltrated the Willowbrook community and began emitting an invisible, cancer causing toxin, ethylene oxide. In 2011, this company was purchased by a Cook County hedge fund, GTCR, LLC. The emissions continued. It was not until August 21, 2018, when the United States Department of Health & Human Services released a report, that the veil was finally lifted on the staggering cancer statistics and other ailments running rampant in these quiet communities. With the cancer-causing effects of ethylene oxide having been studied since the 1940s, America's Chernobyl has been nearly 80 years in the making and it affects our children, our parents, and our grandparents. This is about the children our community may never have, the lives cut short, the dreams destroyed, and the memories never made.

## OVERVIEW

1.     Since 1984, Sterigenics has been emitting ethylene oxide (hereinafter "EtO"), a known carcinogen, into the air from its facility located in Willowbrook, Illinois. As a result, for the last 34 years, those who live and work in Willowbrook and

2

FILED DATE: 10/26/2018 3:10 PM   2018L010477

the surrounding area have unknowingly been inhaling EtO in the air they breathe on a routine and continuous basis.

2. Sterigenics neither informed the residents of the Willowbrook community or those who live or work nearby that it systematically emits EtO into the air, nor warned residents that they were routinely and constantly breathing and are continuing to routinely and constantly breathe in a known carcinogen.

3. On or about August 21, 2018, an "Evaluation of Potential Health Impacts for Ethylene Oxide Emissions" prepared by the U.S. Department of Health and Human Services, Agency for Toxic Substances and Disease Registry (hereinafter "ATSDR"), was released to the general public.[1] The ATSDR report was based upon air measurements of EtO collected in May 2018 from 29 discrete locations near the Sterigenics facility in Willowbrook.

4. Relative to the Sterigenics facility in Willowbrook, the ATSDR concluded that "residents and workers are exposed to elevated airborne EtO concentrations from facility emissions." The ATSDR further concluded that "*an elevated cancer risk exists* for residents and off-site workers in the Willowbrook community surrounding the Sterigenics facility," and that "[t]hese elevated risks *present a public health hazard to these populations*." Among other things, the ATSDR Evaluation "recommends that Sterigenics take *immediate action* to reduce EtO emissions at this facility."

---

[1] https://www.atsdr.cdc.gov/HAC/pha/sterigenic/Sterigenics_International_Inc-508.pdf

FILED DATE: 10/26/2018 3:10 PM  2018L010477

5.    According to the EPA, the upper limit of acceptable cancer risk for airborne toxins, such as EtO, is 1 in 10 thousand (or 100 in 1 million). In other words, according to the EPA, it "will generally presume that if the risk to that individual is no higher than approximately 1 in 10 thousand, that risk level is considered acceptable. . . ."[2]

6.    Based upon the EPA's 2014 National Air Toxics Assessment, there are 106 census tracts in the United States with cancer risk scores greater than the acceptable limits. Most of those 106 tracts are located in "Cancer Alley," which is a notorious area along the Mississippi River between Baton Rouge and New Orleans with numerous industrial plants.

7.    According to the EPA's 2014 measurements, the immediate area in DuPage County surrounding the Sterigenics facility in Willowbrook, referred to as Tract 17043845902, has a cancer risk of 281.8075 in 1 million—which is nearly three times higher than the EPA's acceptable limits.

8.    To put this into further context, the EPA's 2014 National Air Toxics Assessment documented cancer risks in **76,727** census tracts across the country. The Willowbrook Tract, 1704385902, has the highest cancer risk in Illinois and the nineteenth (19th) highest cancer risk in the United States. In other words, the Willowbrook Tract is in the top 99.98% tracts in terms of cancer risk in the country.

9.    Figure 1, below, identifies the nineteen census tracts in the United States with the highest cancer risk. Twelve are located along Cancer Alley. Five tracts

---

[2] https://www.epa.gov/national-air-toxics-assessment/nata-frequent-questions

FILED DATE: 10/26/2018 3:10 PM   2018L010477

have sterilization plants, such as Sterigenics, that emit massive amounts of EtO. In fact, sterilization plants are almost entirely responsible for causing the extraordinarily high cancer risks in DuPage County, Illinois, Jefferson County, Colorado, and Lehigh County, Pennsylvania.

## Figure 1

|  | State | EPA Region | County | FIPS | Tract | Population | Total Cancer Risk (per million) |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070800 | 2,537 | 1,505.1167 |
| 3 | LA | EPA Region 6 | St. Charles | 22089 | 22089060100 | 1,937 | 808.7227 |
| 4 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070900 | 3,115 | 616.6193 |
| 5 | PA | EPA Region 3 | Lehigh | 42077 | 42077005902 | 1,571 | 596.4609 |
| 6 | CO | EPA Region 8 | Jefferson | 08059 | 08059010902 | 2,310 | 525.5596 |
| 7 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070700 | 4,348 | 511.3240 |
| 8 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095071000 | 2,840 | 490.2785 |
| 9 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095000000 | 45,924 | 413.3152 |
| 10 | WV | EPA Region 3 | Kanawha | 54039 | 54039013400 | 2,222 | 366.6597 |
| 11 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095071100 | 3,398 | 363.1912 |
| 12 | TX | EPA Region 6 | Harris | 48201 | 48201343100 | 4,629 | 348.2016 |
| 13 | PA | EPA Region 3 | Lehigh | 42077 | 42077000101 | 3,661 | 346.5181 |
| 14 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070500 | 6,229 | 329.2657 |
| 15 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070100 | 2,685 | 303.0079 |
| 16 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070300 | 6,258 | 296.3112 |
| 17 | TX | EPA Region 6 | Harris | 48201 | 48201343200 | 4,944 | 296.1831 |
| 18 | LA | EPA Region 6 | St. John the Baptist | 22095 | 22095070400 | 4,381 | 286.5417 |
| 19 | LA | EPA Region 6 | St. Charles | 22089 | 22089062700 | 4,753 | 284.5145 |
| 20 | IL | EPA Region 5 | DuPage | 17043 | 17043845902 | 3,411 | 281.8075 |

10.     With respect to the Willowbrook Tract, 88.98% of the elevated cancer risk is attributed to EtO emissions; and the only facility in the Willowbrook Tract emitting EtO is Sterigenics. As a result, Sterigenics alone is almost entirely responsible for the Willowbrook Tract having the 19th highest cancer risk in the country.

11.     Only one facility in the entire country emits more EtO than the Sterigenics facility in Willowbrook.

12.     The data cited in Paragraphs 6 through 11, above, is based on sampling from 2014. More recent data, however, reveals that the cancer risk in Willowbrook is far higher than previously determined. In May 2018, air samples were taken and analyzed from the area surrounding the Sterigenics facility in Willowbrook. Those samples revealed a **<u>current</u>** cancer risk of 6,400 in 1 million (or 64 in 10 thousand), which is **<u>64 times the acceptable limit</u>**.

13.     As a direct and proximate result of Sterigenics' emissions of EtO over the course of the last 34 years, the Willowbrook community has become one of the most toxic and one of the most dangerous communities from a health and well-being standpoint in the entire country. Those who live and work in the Willowbrook area have been victimized by Sterigenics' negligent acts and omissions, as well as its conscious disregard and utter indifference to human life and the health and well-being of those in the community.

14.     Neither the extent of Sterigenics' EtO emissions nor the impact of those emissions on the health and well-being of those who live and work in the Willowbrook area was known by the general public until the August 21, 2018 release of the ATSDR report and the August 22, 2018 release of EPA's 2014 National Air Toxics Assessment.

## PARTIES

15.     This is an Illinois action. It is brought on behalf of an Illinois citizen, for an injury that occurred in Illinois, as a result of ongoing negligence that took place in Illinois. All of the actions that caused Plaintiff's injuries were a direct result of

FILED DATE: 10/26/2018 3:10 PM    2018L010477

actions orchestrated by an entity managed out of Illinois, Sterigenics, U.S., LLC, which is now overseen by another Illinois entity, GTCR, LLC.

16.     Plaintiff, Lisa Flanagan, is 47 years old years old and is a citizen of Illinois. From 1981 to 1988, she lived at 17W435 Concord Place, Darien, IL, which is located 1.3 miles from the Sterigenics facility. From 1988 to 1998, she lived at 10S285 Hampshire Lane E., Willowbrook, IL, which is located 1.8 miles from the Sterigenics facility. She also attended Hinsdale South High School from 1985 to 1989, which is located 1.1 miles from the Sterigenics facility. In 2006, Lisa Flanagan was officially diagnosed with lymphoma in Cook County, Illinois at Alexian Brothers Medical Center.

17.     All of Lisa Flanagan's treatment has occurred, and continues to occur, in Cook County, Illinois at Northwest Oncology and Hematology and The University of Chicago.

18.     Lisa Flanagan did not have notice that her lymphoma was wrongfully caused or that it was caused by Sterigenics' emissions of EtO until the recent ATSDR report was released in August 2018.

19.     Defendant Sterigenics U.S., LLC is a limited liability company organized under the laws of Delaware and having its headquarters and principal place of business at 2015 Spring Road, Suite 650, Oak Brook, Illinois 60523.

20.     Sterigenics U.S., LLC, is a subsidiary of Sotera Health LLC, previously named Sterigenics International, Inc.

FILED DATE: 10/26/2018 3:10 PM    2018L010477

21.     In 2011, Sterigenics International LLC was purchased for $675 million by the Chicago-based private equity firm, GTCR, LLC (hereinafter "GTCR"). From 2011 until the present, GTCR, LLC, with its principal place of business at 300 N. LaSalle Street, Suite 5600, Chicago, Cook County, IL, owned, operated, managed, and/or maintained Sterigenics. The Chairman of GTCR in 2011 was Governor Bruce Rauner.

22.     In 2017, Sterigenics International LLC announced that it had changed its parent company name to Sotera Health LLC.

23.     The core of GTCR's investment strategy is—as repeated frequently on its website and other promotional material—"finding and partnering with management leaders in core domains to identify, acquire and build market-leading companies through transformational acquisitions and organic growth."[3]

24.     GTCR's approach of "creating partnerships with exceptional leaders" is so fundamental to its business that GTCR has trademarked "The Leaders Strategy" to describe its collaborative approach to investing in companies.[4]

25.     GTCR has described its involvement with Sterigenics as a partnership from the beginning: "As part of the Sterigenics transaction, GTCR partnered with Michael Mulhern, who joined as CEO shortly after closing. Together, GTCR and Mr. Mulhern identified several initiatives to improve Sterigenics' operational and growth

---

[3] https://www.gtcr.com/the-leaders-strategy/
[4] *Id.*

8

FILED DATE: 10/26/2018 3:10 PM   2018L010477

initiatives, enhance its market leadership and drive incremental earnings growth."[5]
GTCR's close relationship with Sterigenics has also frequently been mentioned in
GTCR's own material[6] and in the media.[7]

26.     A video featured prominently on GTCR's website homepage
at https://www.gtcr.com/ further highlights the integrated nature of GTCR's
relationship with Sterigenics. In the video, which is transcribed below, GTCR
Managing Director Dean Mihas and the then-CEO of Sterigenics discuss GTCR's
significant involvement in and control over Sterigenics:

> MIHAS (GTCR Managing Director): We believe very strongly at GTCR that
> domain expertise is pretty critical.

> MULHERN (Sterigenics then-CEO): When you combine that knowledge, that
> analysis, prudent risk-taking, I think that leads to – has the potential to lead
> to – great health outcomes.

> MIHAS: Take the healthcare group in particular. We spent a lot of time doing
> proactive research, picking niches within the healthcare industry, to explore,
> to really understand the trends.

> MULHERN: The amount of diligence they do to really understand a sector, the
> companies within the sector, the management teams, is unlike anything I've
> seen.

> MIHAS: It was probably a year before we even acquired Sterigenics that we
> started digging around the contract sterilization space, trying to understand
> who the key companies are, who the leaders are, what the industry growth
> profile looks like, how large it is.

---

[5] https://www.gtcr.com/leadership-stories/sterigenics-transformation-through-organic-growth-and-strategic-acquisitions/
[6] See, e.g., https://www.gtcr.com/gtcr-closes-the-acquisition-of-sterigenics-international-inc/
[7] See, e.g., https://www.pehub.com/2011/03/gtcr-completes-sterigenics-buy/

FILED DATE: 10/26/2018 3:10 PM    2018L010477

MULHERN: It came to our knowledge that a company was about to come to market to be sold. If that company got into the wrong hands, it would put at risk our source of supply. GTCR just kicked it into high gear and said we must own this asset, and today we're the only vertically integrated sterilization company in the world and in large part because GTCR made the decision and committed the resources to get it done.

MIHAS: So there's a lot of effort and R&D really that goes into having this domain expertise. It's not just about working on a deal when it comes in.

MULHERN: Beyond the obvious, which is that they're extremely talented at what they do, I have enormous trust in them. And I think trust is a critical part when you partner with a private equity firm.

27.     GTCR's partnership with Sterigenics also included playing an active role in expanding Sterigenics' geographic footprint: "In addition to organic initiatives, GTCR and management also strategically repositioned the business through three acquisitions, including two sterilization facility add-ons and the transformative acquisition of Nordion, a key supplier to Sterigenics."[8]

28.     The close partnership between GTCR and Sterigenics is also reflected in GTCR's substantial involvement on Sterigenics' board of directors. According to GTCR's website, at least four of its ten managing directors currently serve, or have served, on the board of directors of Sterigenics or Sotera.[9]

---

[8] https://www.gtcr.com/leadership-stories/sterigenics-transformation-through-organic-growth-and-strategic-acquisitions/

[9] See https://www.gtcr.com/team-member/sean-l-cunningham/; https://www.gtcr.com/gtcr-promotes-aaron-d-cohen-and-sean-l-cunningham-to-principal/; https://www.gtcr.com/team-member/benjamin-j-daverman/; https://www.bloomberg.com/research/stocks/private/person.asp?personId=66077&privcapId=20801; https://www.gtcr.com/team-member/david-a-donnini/; https://www.bloomberg.com/research/stocks/private/person.asp?personId=1155789&privcapId=20801; https://www.gtcr.com/team-member/constantine-s-mihas/

FILED DATE: 10/26/2018 3:10 PM    2018L010477

29.     Publicly available documents reveal that principals of GTCR, acting in their capacity as members of the board of directors of Sterigenics, have been actively involved in Sterigenics acquisition of other companies.[10]

30.     Upon information and belief, Defendant Bob Novak is an individual who resides the state of Illinois. Novak is the Operations Manager at the Sterigenics facility in Willowbrook, and has worked in that capacity since August 2003. He is responsible for the operation of the facility, coordinating and overseeing all activities in plant operations, and overall plant safety.

31.     Defendant Roger Clark is an individual who resides in Chicago, Cook County, Illinois. Clark was the Maintenance Supervisor at the Sterigenics facility in Willowbrook and held that position for nearly 30 years from the late 1980s until approximately 2015. He was responsible for calibrating the internal EtO monitors and overseeing the maintenance activities at the Sterigenics' facility.

### VILLAGE OF WILLOWBROOK

32.     The Village of Willowbrook is a suburban community located roughly 20 miles southwest of Chicago. Its population is approximately 8,500. The Village owns and operates over 54 acres of parks on 10 separate sites throughout the Village.

33.     Sterigenics operates two buildings in Willowbrook. Building One is located at 7775 S. Quincy Street and Building Two is located at 830 Midway Drive.

---

[10]http://news.nordion.com/mobile.view?c=68761&v=202&d=3&id=aHR0cDovL2FwaS50ZW5rd2l6YXJkLmNvbS9maWxpbmcueG1slYWdlPTk1NTE5NzMmRFNFUT0yJlNFUT0mU1FERVNDPVNFQ1RJT05fRVhISUJJVCZleHA9JnN1YnNpZD01Nw%3D%3D

11

FILED DATE: 10/26/2018 3:10 PM 2018L010477

Upon information and belief, Sterigenics operated a third building at 7827 Quincy Street for a brief period of time.

34. During the times relevant for the time period referenced herein, Sterigenics operated another facility at 711 Cooper Court, Schaumburg, Cook County, Illinois.

35. The three Sterigenics buildings in Willowbrook are all located in a densely populated metropolitan area with 19,271 people living within one mile.

36. Gower Middle School in Burr Ridge is located 0.7 miles from the Sterigenics facility and has an enrollment of approximately 400 students. Gower West Elementary School is 0.9 miles from the Sterigenics facility. Conev's Cradle Infant Care, Inc., is a daycare center located 0.7 miles from the Sterigenics facility. Hinsdale South High School, with an enrollment of 1,500 students, is located 1.1 miles from the Sterigenics facility.

37. The Willowbrook Police Department, with its 23 full-time sworn police officers and three civilian employees, is located a mere 495 feet from the Sterigenics facility. Willowbrook's Village Office and City Hall is located 0.2 miles from the Sterigenics facility.

38. The Willowbrook Community Park is 0.6 miles from the Sterigenics facility. And there are highly dense residential areas to the immediate west of the Sterigenics facility within 0.3 miles, to the southeast within 0.6 miles, to the southwest within 0.9 miles, to the north within 0.7 miles, to the northeast within 0.8 miles, and to the east within 1.0 mile.

39.    Willowbrook Town Center, which is located 1.1 miles from the Sterigenics facility, has nearly 200,000 square feet of retail stores, restaurants, and other businesses. There are 91,000 residents within a three-mile radius of the Willowbrook Town Center, and an additional 33,000 people employed in the area's 3,000-plus businesses.

40.    Figure 2, below, depicts the area within a 1.5 mile radius of the Sterigenics facility.

***

**Figure 2**



**ETHYLENE OXIDE**

13

FILED DATE: 10/26/2018 3:10 PM    2018L010477

41.     The DNA damaging properties of EtO have been studied since the 1940s, and for more than 40 years it has been consistently recognized as dangerous, toxic, and carcinogenic.

42.     In a 1977 report, the National Institute for Occupational Safety and Health (hereinafter "NIOSH") concluded that occupational exposure to EtO may increase the frequency of genetic mutations in human populations and recommended that EtO be considered as mutagenic and potentially carcinogenic to humans. Given EtO's carcinogenic potential, the 1977 NIOSH report also recommended that alternative sterilization processes be used whenever available.

43.     In 1981, NIOSH released a new bulletin focusing on new evidence of carcinogenic, mutagenic, and reproductive hazards associated with EtO. It also reiterated that EtO was a potential occupational carcinogen and reported that no safe levels of EtO exposure have been demonstrated.

44.     In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as reasonably anticipated to be a human carcinogen.

45.     In 1987, the state of California (home to two Sterigenics EtO sterilizing plants) officially designated EtO a carcinogen.

46.     In the early 1990s, the first high quality, long-term research on ethylene oxide's carcinogenic impacts on humans was published. This research was undertaken based on a NIOSH study tracking the mortality of 18,254 U.S. workers who had been exposed to EtO between the 1940s and 1980s at sterilizer plants much

like the Sterigenics Willowbrook facility. In fact, according to Kathleen Hoffman the NIOSH study actually included a few Sterigenics facilities.[11] The NIOSH study ultimately found causal links between exposure to EtO and increased mortality from lymphatic, hematopoietic, and breast cancers. The research on the NIOSH study has since been heavily cited and relied upon by major regulatory organizations, including the World Health Organization (hereinafter "WHO") and the United States Environmental Protection Agency (hereinafter "EPA").

47.     In 1994 the WHO's International Agency for Research on Cancer (hereinafter "IARC") listed EtO as a Group 1 human carcinogen, the agency's highest risk classification, finding "Ethylene Oxide is carcinogenic to humans."

48.     In 2000, the U.S. Department of Health and Human Services published the Ninth Annual Report on Carcinogens and revised its classification for EtO to known to be a human carcinogen.

49.     The U.S. Department of Labor's Occupational Safety and Health Administration (hereinafter "OSHA") 2002 fact sheet on EtO indicates that "[b]oth human and animal studies show that EtO is a carcinogen" and requires employers to provide clear signs and labels notifying workers of EtO's "carcinogenic and reproductive hazards."[12]

---

[11] https://yosemite.epa.gov/Sab/Sabproduct.nsf/B839FA45582C200185257D9500496B0E/$File/EPA-+Sterigenics+Speaking+Points+for+IRIS+SAB+Review-Nov+2014.pdf *accessed 9.25.2018.*
[12] https://www.osha.gov/OshDoc/data_General_Facts/ethylene-oxide-factsheet.pdf *accessed 9.25.2018.*

FILED DATE: 10/26/2018 3:10 PM    2018L010477

FILED DATE: 10/26/2018 3:10 PM   2018L010477

50.    In 2016, the EPA's Integrated Risk Information System (hereinafter "IRIS") reclassified EtO as "carcinogenic to humans," and increased the cancer potency of EtO by 30 times.

51.    The half-life of EtO in the atmosphere has been reported in certain circumstances to be two-hundred eleven (211) days. Neither rain nor absorption into aqueous aerosols is capable of removing ethylene oxide from the atmosphere.

52.    Acute exposure to EtO can result in nausea, vomiting, neurological disorders, bronchitis, pulmonary edema, and emphysema.

53.    Chronic exposure to EtO can irritate the eyes, skin, nose, throat, lungs, and can cause harm to the brain and nervous system leading to headaches, nausea, memory loss, and numbness.

54.    Chronic inhalation exposure to EtO can also cause reproductive and developmental impairments. Evidence recognized by the EPA indicates that inhalation exposure to EtO can cause an increased rate of miscarriages in females. Evidence also indicates that EtO inhalation exposure can cause decreased sperm concentration and testicular degeneration in males.

55.    Additionally, inhalation exposure to EtO can cause mutations and chromosomal damage that can lead to birth defects and cancer. Even when exposure to EtO diminishes or ceases, the frequency of sister chromatid exchanges (mutations/chromosomal alterations) have been found to remain elevated for at least six months.

FILED DATE: 10/26/2018 3:10 PM   2018L010477

56.     Chronic inhalation exposure to EtO also causes cancer. Evidence recognized by the EPA indicates that inhalation exposure to EtO causes various cancers including but not limited to lymphatic cancers, leukemia, and breast cancer. There is also evidence that EtO causes tumors in the body and reproductive issues in both men and women. **As a result, the EPA has concluded that EtO is carcinogenic to humans by the inhalation route of exposure.** The stated confidence in this classification is "HIGH."

## STERIGENICS' OPERATIONS

57.     Sterigenics has been releasing EtO into the air in the Willowbrook area since 1984. The facility stores EtO and sprays it into gas chambers to sterilize medical equipment and pharmaceuticals. Building One of the Sterigenics facility, which was constructed in 1984, holds fifteen gas chambers, while Building Two, which was constructed in 1999, holds four gas chambers which were built in 1999 and 2012. Upon information and belief, there were periods of time where no pollution controls were in place. Additionally, even where there have been certain pollution controls in place they have been ineffective and/or lacking due to the acts and omissions of the defendants. Further, upon information and belief, some ethylene oxide used by Sterigenics does not go through any pollution control but rather is emitted into the air through back vents.

58.     The Sterigenics facility operates 24 hours per day, which means toxic, cancerous gas is emitted from the Sterigenics facility on a steady and continuous

FILED DATE: 10/26/2018 3:10 PM   2018L010477

basis. As a result, EtO is a constant element in the air breathed by those who live and work near the Willowbrook facility.

59. From 1995 through 2016, the reported EtO emissions from the Sterigenics facility are depicted in Figure 3, below:

**Figure 3**

| Year | Pounds | Year | Pounds |
|------|--------|------|--------|
| 1995 | 18,213 lbs. | 2006 | 3,985 lbs. |
| 1996 | 22,000 lbs. | 2007 | 3,698 lbs. |
| 1997 | 26,000 lbs. | 2008 | 3,597 lbs. |
| 1998 | 31,000 lbs. | 2009 | 3,429 lbs. |
| 1999 | 1,440 lbs. | 2010 | 6,869 lbs. |
| 2000 | 7,341 lbs. | 2011 | 6,878 lbs. |
| 2001 | 7,848 lbs. | 2012 | 6,811 lbs. |
| 2002 | 6,686 lbs. | 2013 | 5,892 lbs. |
| 2003 | 6,630 lbs. | 2014 | 5,036 lbs. |
| 2004 | 5,039 lbs. | 2015 | 4,706 lbs. |
| 2005 | 2,621 lbs. | 2016 | 4,009 lbs. |

60. No data on ambient air emissions was kept before 1995. However, the ATSDR notes that the available data suggest that "substantially higher ambient releases prior to 1995 were likely." Indeed, a lone 1988 report on Sterigenics' Willowbrook facility's EtO emissions accessed through the EPA's TRI Explorer Database supports this contention.[13] The 1988 report indicates that the Willowbrook

---

[13] https://iaspub.epa.gov/triexplorer/release_trends?tri=60521GRFFT7775Q&p_view=TRYR&trilib=TRIQ1&sort=_V IEW_&sort_fmt=1&state=All+states&county=All+counties&chemical=000075218&industry=ALL&core_year=&t ab_rpt=1&FLD=AIRLBY&FLD=E1&FLD=E2&FLD=E3&FLD=E4&FLD=E41&FLD=E42&FLD=E5&FLD=E5 2&FLD=E53&FLD=E53A&FLD=E53B&FLD=E54&FLD=E51&FLD=E51A&FLD=E51B&FLD=TSFDSP&FLD =m10&FLD=m41&FLD=m62&FLD=potwmetl&FLD=m71&FLD=m81&FLD=m82&FLD=m72&FLD=m63&FL D=m64&FLD=m65&FLD=m66&FLD=m67&FLD=m73&FLD=m79&FLD=m90&FLD=m94&FLD= RELLBY

FILED DATE: 10/26/2018 3:10 PM   2018L010477

facility emitted 97,268 pounds of EtO into the air.[14] This is over three times greater than the highest amount recorded in the contiguous 1995-2016 data set (32,200 pounds in 1998) and over 20 times greater than emissions levels in 2016 (4,205 pounds).

61.    Without discovery from Sterigenics, it is impossible to know precisely how many pounds of EtO Sterigenics released into the air from 1984 to 1994, but it is reasonable to infer that the pre-1995 emissions of EtO were at best, similar to those from 1995 to 1998, and at worst, closer to the colossal emissions in 1988.

62.    Notably, the historical EPA emission reports from the Willowbrook Sterigenics facility demonstrate that the amounts of EtO released from the plant over the last decade are significantly lower than the amounts released during prior decades. Total air releases in the 1990s were up to **7.7 times higher** than present levels. Sterigenics' EtO releases in the 1980s were even higher than this, with available data suggesting that Sterigenics released **over 20 times more** EtO into the air in 1988 than it did in 2016, the most recent date for which emissions data is publicly available. As a result, the ATSDR report's current estimate of Willowbrook area residents' cancer risk (which is based on sampling conducted this year) must drastically underestimate of the levels of risk faced by those exposed to the Sterigenics facility's emissions in the 1980s and 1990s

---

[14]
https://ofmpub.epa.gov/enviro/tri_formr_partone_v2.get_thisone?rpt_year=1988&dcn_num=1388025024213&ban_flag=Y

FILED DATE: 10/26/2018 3:10 PM    2018L010477

63.    Sterigenics' air emissions were not the only manner in which Sterigenics exposed area residents, workers, and students to EtO. Sterigenics reported at least one mass "uncontrolled release" of EtO. On or about October 7, 2013, Sterigenics released ethylene glycol (a byproduct of EtO) into the soil and groundwater at its Willowbrook facility. In addition, on October 21, 2013, Sterigenics reported the uncontrolled release of 30 pounds of ethylene oxide into the air from its Willowbrook facility. The Illinois Attorney General filed a lawsuit against Sterigenics for its water and air pollution and alleged numerous violations of environmental statutes and regulations. Sterigenics entered into a consent order whereby it agreed to pay a $50,000.00 fine.

64.    Upon information and belief, Sterigenics also released ethylene glycol into the soil and groundwater at its Willowbrook facility on a regular and continuing basis via drain pits that collected excess ethylene glycol from the EtO chambers.

65.    At all relevant times, Sterigenics knew or should have known that EtO is toxic and dangerous to human health and well-being. In addition, at all relevant times, Sterigenics knew or should have known that EtO is classified as a carcinogen and has been determined to cause various illnesses and ailments including, but not limited to, cancer.

66.    Notwithstanding Sterigenics' knowledge concerning the dangers of operation, it has been emitting EtO from its facility in Willowbrook on a routine and constant basis for 34 years. Further, notwithstanding Sterigenics' knowledge that chronic inhalation exposure to EtO causes adverse conditions to the eyes, skin, nose,

throat, lungs, and nervous system, reproductive and developmental impairments, mutations, chromosomal damage, birth defects, and cancer, it has failed to warn those who live and work in the Willowbrook area that they are being exposed to and breathing in EtO on a routine and constant basis.

## STERIGENICS' PATTERN OF BEHAVIOR

67.     Sterigenics has been the subject of regulatory and administrative enforcement relative to its EtO emissions in Europe. Beginning in 1992, Sterigenics operated a sterilization facility in Zoetermeer, a city in the western Netherlands. The Zoetermeer facility was located in an area with residential housing and numerous small business. In 2009, it was determined that Sterigenics had been knowingly releasing amounts of EtO that exceeded the local Maximum Permissible Risk concentration into the air for a number of years and was penalized. Sterigenics, however, continued with its excessive emissions until it ultimately relocated its facility in 2010. According to the Public Prosecutor in Zoetermeer, Sterigenics knew of the unauthorized emissions, but failed to act and did not warn local residents about the emissions or the dangers associated therewith.

68.     Sterigenics has also exhibited a pattern of neglecting safety in its facilities in the U.S. Sterigenics failed to properly train employees in the safe use of EtO at its sterilizing plant in Ontario, California, which resulted in a major EtO explosion on August 19, 2004 that injured four employees and forced the evacuation of the plant and neighboring facilities. The U.S. Chemical Safety and Hazard Investigation Board (hereinafter "CSB") investigation into the incident found that

FILED DATE: 10/26/2018 3:10 PM    2018L010477

Sterigenics had failed to ensure its maintenance employees understood the hazards associated with EtO-based processes, which led them to manually override safety devices, causing the explosion. The CSB faulted Sterigenics management for not implementing "company-wide engineering control recommendations that could have prevented this explosion" and failing to follow recommendations on EtO concentrations disseminated by NIOSH.

69.    Further evidencing Sterigenics' disregard for safety, OSHA records show that Sterigenics has paid thousands of dollars in fines for safety violations at its Willowbrook facility.[15]  Specifically, Sterigenics paid $5,062 in fines in 2006 for several "Serious" violations that left workers exposed to unspecified "highly hazardous chemicals."[16]  Given the work undertaken at the Willowbrook facility, these "highly hazardous chemicals" likely included EtO.

70.    Current and former Sterigenics employees have also raised concerns about company safety practices around EtO. For instance, on the company's Glassdoor page, one former employee noted on June 25, 2013 that "[t]here is a minimum attention to quality & safety which will backfire eventually."[17] Another stated on October 9, 2015 that "you're working with Ethylene Oxide which is extremely dangerous and the company seems to cut corners around safety at times."[18] Perhaps most concerning, an "EtO A Operator" in the Charlotte, North Carolina

---

[15] E.g. https://www.osha.gov/pls/imis/establishment.inspection_detail?id=308153717 *accessed 9.25.2018.*
[16] https://www.osha.gov/pls/imis/establishment.inspection_detail?id=308153717 &
https://www.osha.gov/pls/imis/establishment.violation_detail?id=308153717&citation_id=01001 *accessed 9.25.2018.*
[17] https://www.glassdoor.com/Reviews/Employee-Review-Sterigenics-RVW2768416.htm *accessed 9.25.2018.*
[18] https://www.glassdoor.com/Reviews/Employee-Review-Sterigenics-RVW8236300.htm *accessed 9.25.2018.*

FILED DATE: 10/26/2018 3:10 PM   2018L010477

facility reported on February 24, 2015 that "Safety is an issue sometimes regarding procedures. The maintenance team cuts a lot of corners." This employee advised management to "Lock out the overrides for equipment. Fire any maintenance manager that shows operators how to manually operate equipment without it showing on the computer system."[19] Notably, this comment comes after the 2004 Ontario, California explosion. As discussed above, the CSB identified maintenance cutting corners and manually overriding equipment as factors leading to that incident. This employee review suggests that the safety and management failures that caused the California explosion were not addressed system-wide and continued to be in evidence at other Sterigenics facilities over a decade later.

71.     Taken together, these elements demonstrate a pattern of Sterigenics consistently failing to implement company-wide safety measures across all its facilities, despite research, NIOSH bulletins, regulatory interventions, and problematic incidents demonstrating their need. This willingness to "cut corners" and lack of oversight may explain why Sterigenics failed for decades to install emission mitigation technology to limit passive venting of EtO from its Willowbrook facility.

## COUNT I
### Negligence – Sterigenics U.S., LLC

72.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 as if fully set forth as Paragraph 72.

---

[19] https://www.glassdoor.com/Reviews/Employee-Review-Sterigenics-RVW5987616.htm *accessed 9.25.2018.*

FILED DATE: 10/26/2018 3:10 PM  2018L010477

73.     Sterigenics U.S., LLC owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

74.     Sterigenics U.S., LLC managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

75.     Sterigenics U.S., LLC had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

76.     At all relevant times, Sterigenics U.S., LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

77.     Sterigenics U.S., LLC breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

   a.  By emitting EtO into the air from its Willowbrook facility;

   b.  By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

   c.  By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

   d.  By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

24

FILED DATE: 10/26/2018 3:10 PM    2018L010477

e. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

f. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

g. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

h. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

j. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

k. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

78.    As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

79.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT II
### Negligent Training – Sterigenics U.S., LLC

80.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 73 and 74 as if fully set forth as Paragraph 80.

81.     Sterigenics U.S., LLC had and continues to have a duty to properly train its employees to control and dispose of hazardous substances including EtO and its byproducts, including but not limited to ethylene glycol.

82.     At all relevant times, Sterigenics U.S., LLC knew or should have known that failing to properly train its employees to control, monitor, and dispose of hazardous materials would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

83.     Sterigenics U.S., LLC breached its duty to properly train its employees in one or more of the following ways:

   a.  By failing to train its employees about the carcinogenic effects of EtO;

   b.  By failing to train its employees about the proper procedures to control and store EtO and its byproducts, including by not limited to ethylene glycol, such that it would prevent unintended leaks, spills or emissions;

   c.  By failing to train its employees about the proper procedures to monitor EtO emissions;

   d.  By failing to train its employees about the proper procedures for recording EtO emissions;

26

FILED DATE: 10/26/2018 3:10 PM   2018L010477

e. By failing to train its employees about the proper procedures to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

f. By failing to train its employees about the proper procedures for repairing and/or replacing defective EtO emissions equipment;

g. By failing to train its employees about the proper procedures for reporting uncontrolled emissions; and

h. By failing to properly train its employees about the proper procedures for disposing of EtO or its products, including by not limited to ethylene glycol.

84.     As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

85.     As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT III
### Negligent Supervision – Sterigenics U.S., LLC

FILED DATE: 10/26/2018 3:10 PM    2018L010477

86.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 73 and 74 as if fully set forth as Paragraph 86.

87.    Sterigenics U.S., LLC had and continues to have a duty to properly supervise its employees to prevent a creation of danger or harm to third persons.

88.    At all relevant times, Sterigenics U.S., LLC knew or should have known that failing to properly supervise its employees in their control, monitoring and disposal hazardous materials including EtO and its by products, including but not limited to ethylene glycol, would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

89.    Sterigenics U.S., LLC breached its duty to supervise its employees in one or more of the following ways:

   a. By failing to recognize when the proper procedures to control and store EtO and its byproducts, including by not limited to ethylene glycol, were violated resulting in unintended leaks, spills or emissions;

   b. By failing to reprimand and/or discipline employees when the proper procedures to control and store EtO and its byproducts, including by not limited to ethylene glycol, were violated resulting in unintended leaks, spills or emissions;

   c. By retaining employees who repeatedly violated the proper procedures to control and store EtO and its byproducts, including by not limited to ethylene glycol, resulting in unintended leaks, spills or emissions;

   d. By failing to recognize when the proper procedures to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility were violated resulting in unintended leaks, spills, or emissions;

   e. By failing to reprimand and/or discipline employees when the proper procedures to adequately control, reduce, minimize,

28

FILED DATE: 10/26/2018 3:10 PM   2018L010477

and/or mitigate EtO emissions from its Willowbrook facility were violated resulting in unintended leaks, spills, or emissions;

f.  By retaining employees who repeatedly violated the proper procedures to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility resulting in unintended leaks, spills, or emissions;

g.  By failing to recognize when the proper procedures for repairing and/or replacing defective EtO emissions equipment were violated;

h.  By failing to reprimand and/or discipline employees when the proper procedures for repairing and/or replacing defective EtO emissions equipment were violated;

i.  By retaining employees who repeatedly violated the proper procedures for repairing and/or replacing defective EtO emissions equipment;

j.  By failing to recognize when the proper procedures for reporting uncontrolled emissions were violated;

k.  By failing to reprimand and/or discipline employees when the proper procedures for reporting uncontrolled emissions were violated;

l.  By retaining employees who repeatedly violated the proper procedures for reporting uncontrolled emissions;

m.  By failing to recognize when the proper procedures for disposing of EtO or its products, including by not limited to ethylene glycol were violated;

n.  By failing to reprimand and/or discipline employees when the proper procedures for disposing of EtO or its products, including by not limited to ethylene glycol were violated;

o.  By retaining employees who repeatedly violated the proper procedures for disposing of EtO or its products, including by not limited to ethylene glycol;

FILED DATE: 10/26/2018 3:10 PM   2018L010477

p.  By failing recognize when the proper procedures to monitor EtO emissions were violated;

q.  By failing to reprimand and/or discipline employee when the proper procedures to monitor EtO emissions were violated;

r.  By retaining employees who repeatedly violated the proper procedures to monitor EtO emissions;

s.  By failing to recognize when the proper procedures for recording EtO emissions were violated;

t.  By failing to reprimand and/or discipline employees when the proper procedures for recording EtO emissions were violated; and

u.  By retaining employees who repeatedly violated the proper procedures for recording EtO emissions.

90.   As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

91.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT IV
### Willful and Wanton Conduct – Sterigenics U.S., LLC

FILED DATE: 10/26/2018 3:10 PM    2018L010477

92.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 73 and 74 as if fully set forth as Paragraph 92.

93.    Sterigenics U.S., LLC had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

94.    At all relevant times, Sterigenics U.S., LLC knew that EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

95.    Sterigenics U.S., LLC breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a.  By emitting EtO into the air from its Willowbrook facility notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    b.  By placing its own economic interests above the health, safety, and well-being of those who live or work in the Willowbrook community;

    c.  By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

    d.  By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding its knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

FILED DATE: 10/26/2018 3:10 PM   2018L010477

e. By emitting EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

f. Deliberately concealing its knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

g. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk without warning them of the same.

96.     As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

97.     As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT V
### Ultrahazardous Activity / Strict Liability – Sterigenics U.S., LLC

98.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 73 and 74 as if fully set forth as Paragraph 98.

FILED DATE: 10/26/2018 3:10 PM    2018L010477

99.     Sterigenics U.S., LLC's use and emission of EtO from its Willowbrook facility constitutes an ultra-hazardous activity.

100.    Sterigenics U.S., LLC's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

101.    Sterigenics U.S., LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

102.    While the activities conducted by Sterigenics U.S., LLC are exceedingly dangerous, it offers little to no value to the surrounding community.

103.    Because the activities of Sterigenics U.S., LLC are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

104.    As a direct and proximate result of Sterigenics U.S., LLC's ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

105.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

FILED DATE: 10/26/2018 3:10 PM   2018L010477

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT VI
### Civil Battery – Sterigenics U.S., LLC

106.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 73 and 74 as if fully set forth as Paragraph 106.

107.    At all relevant times, Sterigenics U.S., LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

108.    Notwithstanding this knowledge, Sterigenics U.S., LLC caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

109.    Plaintiff's contact with EtO was offensive and harmful.

110.    Sterigenics U.S., LLC intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

111.    Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

112.    As a direct and proximate result of Sterigenics U.S., LLC's emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

113.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

## COUNT VII
## Public Nuisance – Sterigenics U.S., LLC

114.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 73 and 74 as if fully set forth as Paragraph 114.

115.    The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO. The Illinois Constitution guarantees these rights to its citizens. Article XI of the Illinois Constitution of 1970, Environment, Section 1, Public Policy - Legislative Responsibility, provides that:

> The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

Article XI of the Illinois Constitution of 1970, Environment, Section 2, Rights of Individuals, provides that:

> Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate

FILED DATE: 10/26/2018 3:10 PM   2018L010477

legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law.

116.    Sterigenics U.S., LLC's use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics U.S., LLC has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer.

117.    Sterigenics U.S., LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

118.    As a result of Sterigenics U.S., LLC's use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

119.    As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against Sterigenics U.S., LLC in an amount be determined by a trier of fact.

FILED DATE: 10/26/2018 3:10 PM   2018L010477

## COUNT IX
### Negligence – Bob Novak

120. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 as if fully set forth as Paragraph as if fully set forth as Paragraph 120.

121. Since August 2003, Bob Novak has been the Operations Manager at the Sterigenics facility in Willowbrook.

122. In that capacity, Bob Novak has been responsible for the operation of the facility, coordinating and overseeing all activities in plant operations, which would include testing and analysis to determine the nature and extent of EtO emissions.

123. At all relevant times, Bob Novak had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding the Sterigenics facility in Willowbrook.

124. At all relevant times, Bob Novak knew or should have known that the EtO gas emitting from the Sterigenics facility in Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

125. Bob Novak breached his duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

      a. Permitting chamber doors to remain open during and/or after the sterilization process and thereby allowing dangerous amounts of ethylene oxide to escape the chamber area in the Sterigenics facility in Willowbrook;

37

FILED DATE: 10/26/2018 3:10 PM 2018L010477

b. Permitting products that have been sterilized and are still off-gassing to be placed and stored in areas without pollution control and/or adequate ventilation system in the Sterigenics facility in Willowbrook;

c. Allowing at least six chambers to run at the same time and thereby overloading the vacuum system such that pollution control for one or more chambers was inoperable and/or ineffective in the Sterigenics facility in Willowbrook;

d. Allowing exterior doors in the warehouse to remain open for unreasonable lengths of time in the Sterigenics facility in Willowbrook;

e. Failing to timely order and/or replace filters for the dry system and thereby allowing excess amounts of ethylene oxide emissions therefrom in the Sterigenics facility in Willowbrook;

f. Failing to properly monitor EtO emissions and/or document EtO emissions resulting in an inaccurate report on pollution relating to the Sterigenics facility in Willowbrook;

g. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

h. By permitting emissions of excessive, unnecessary, and/or dangerous volumes of EtO into air from the Sterigenics facility in Willowbrook; and

i. By subjecting Plaintiff and those who live and work nearby the Sterigenics facility in Willowbrook to an elevated cancer risk.

126. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

127. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering,

FILED DATE: 10/26/2018 3:10 PM   2018L010477

mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against BOB NOVAK in an amount be determined by a trier of fact.

## COUNT X
### Willful and Wanton Conduct – Bob Novak

128. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 121 and 122 as if fully set forth as Paragraph as if fully set forth as Paragraph 128.

129. At all relevant times, Bob Novak had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

130. At all relevant times, Bob Novak knew that EtO gas emitting from Sterigenics Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

131. Bob Novak breached his duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a. By approving test results and/or monitoring systems which provided misleading and inaccurate report on pollution relating to the Sterigenics facility in Willowbrook;

FILED DATE: 10/26/2018 3:10 PM 2018L010477

b. By permitting emissions of EtO into the air from Sterigenics Willowbrook facility notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

c. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

d. By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

e. Deliberately concealing his knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

f. By subjecting Plaintiff and those who live and work nearby Sterigenics Willowbrook facility to an elevated cancer risk without warning them of the same.

132. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

133. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against BOB NOVAK in an amount be determined by a trier of fact.

## COUNT XI
### Negligence – Roger Clark

134. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 as if fully set forth as Paragraph 134.

135. Roger Clark was the Maintenance Supervisor at the Sterigenics facility in Willowbrook from the late 1980s until approximately 2015.

136. In that capacity, Roger Clark was responsible for calibrating the internal EtO monitors and overseeing the sterilization process at the Sterigenics facility in Willowbrook.

137. At all relevant times, Roger Clark had a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding the Sterigenics facility in Willowbrook.

138. At all relevant times, Roger Clark knew or should have known that the EtO gas emitting from the Sterigenics facility in Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

139. Roger Clark breached his duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

    a. Inaccurately calibrating internal EtO monitors to allow for erroneous monitoring results;

41

FILED DATE: 10/26/2018 3:10 PM    2018L010477

b. Failing to properly monitor EtO emissions and/or document EtO emissions resulting in an inaccurate report on pollution relating to the Sterigenics facility in Willowbrook;

c. Permitting chamber doors to remain open during and/or after the sterilization process and thereby allowing dangerous amounts of ethylene oxide to escape the chamber area in the Sterigenics facility in Willowbrook;

d. Permitting products that have been sterilized and are still off-gassing to be placed and stored in areas without pollution control and/or adequate ventilation system in the Sterigenics facility in Willowbrook;

e. Allowing at least six chambers to run at the same time and thereby overloading the vacuum system such that pollution control for one or more chambers was inoperable and/or ineffective in the Sterigenics facility in Willowbrook;

f. Allowing exterior doors in the warehouse to remain open for unreasonable lengths of time in the Sterigenics facility in Willowbrook;

g. Failing to timely order and/or replace filters for the dry system and thereby allowing excess amounts of ethylene oxide emissions therefrom in the Sterigenics facility in Willowbrook;

h. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i. By permitting emissions of excessive, unnecessary, and/or dangerous volumes of EtO into air from the Sterigenics facility in Willowbrook; and

j. By subjecting Plaintiff and those who live and work nearby the Sterigenics facility in Willowbrook to an elevated cancer risk.

140. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

FILED DATE: 10/26/2018 3:10 PM  2018L010477

141. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against ROGER CLARK in an amount be determined by a trier of fact.

## COUNT XII
### Willful and Wanton Conduct – Roger Clark

142. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 135 and 136 as if fully set forth as Paragraph 142.

143. At all relevant times, Roger Clark had a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

144. At all relevant times, Roger Clark knew that EtO gas emitting from Sterigenics Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

145. Roger Clark breached his duty and was guilty of willful and wanton conduct in one or more of the following ways:

    a. By deliberately falsifying test results and/or inaccurately calibrating monitoring systems to provide a misleading and

FILED DATE: 10/26/2018 3:10 PM   2018L010477

inaccurate report on pollution relating to the Sterigenics facility in Willowbrook;

b. By permitting emissions of EtO into the air from Sterigenics Willowbrook facility notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

c. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

d. By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

e. Deliberately concealing his knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

f. By subjecting Plaintiff and those who live and work nearby Sterigenics Willowbrook facility to an elevated cancer risk without warning them of the same.

146.   As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

147.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

FILED DATE: 10/26/2018 3:10 PM   2018L010477

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against ROGER CLARK in an amount be determined by a trier of fact.

## COUNT XIII
### Negligence – GTCR, LLC

148. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 as if fully set forth as Paragraph 148.

149. GTCR, LLC owned and operated the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 2011.

150. Sterigenics U.S., LLC managed, controlled, and supervised sterilization operations at the Sterigenics facility in Willowbrook, Illinois, during a material portion of time since 1984.

151. GTCR, LLC had and continues to have a duty to exercise ordinary care for the health, safety, and well-being of Plaintiff and those living and working in the area surrounding its Willowbrook facility.

152. At all relevant times, GTCR, LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

153. GTCR, LLC breached its duty and failed to exercise ordinary care of the health and well-being of Plaintiff in one or more of the following ways:

a. By emitting EtO into the air from its Willowbrook facility;

FILED DATE: 10/26/2018 3:10 PM  2018L010477

b. By emitting excessive, unnecessary, and/or dangerous volumes of EtO into air from its Willowbrook facility;

c. By using EtO as part of its sterilization process when safer alternatives could accomplish the same or similar business purpose without presenting the same level of risk to human health and well-being;

d. By placing its own economic interests above the health and well-being of those who live or work in the Willowbrook community;

e. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO;

f. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO;

g. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that it was emitting a known carcinogen into the air from its facility in Willowbrook;

h. By failing to employ safe methods to adequately control, reduce, minimize, and/or mitigate EtO emissions from its Willowbrook facility;

i. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the quality of air;

j. By failing to adequately study and test the effect of its EtO emissions from its Willowbrook facility on the health and well-being of those who live and work in the Willowbrook community; and

k. By subjecting Plaintiff and those who live and work nearby its Willowbrook facility to an elevated cancer risk.

154. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

46

155.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

## COUNT XIV
### Willful and Wanton Conduct – GTCR, LLC

156.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 149 and 150 as if fully set forth as Paragraph 156.

157.   At all relevant times, GTCR, LLC had and continues to have a duty to refrain from willful and wanton conduct and/or conduct that exhibits an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living and working in the area surrounding Sterigenics Willowbrook facility.

158.   At all relevant times, GTCR, LLC knew that EtO gas emitting from Sterigenics Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

159.   GTCR, LLC breached its duty and was guilty of willful and wanton conduct in one or more of the following ways:

47

a. By permitting emissions of EtO into the air from Sterigenics Willowbrook facility notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

b. By failing to warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were being exposed to EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

c. By failing to a warn or advise Plaintiff, as well as those who live or work in the Willowbrook community, that they were breathing in EtO notwithstanding his knowledge that EtO is toxic, poisonous, and causes adverse medical issues including, but not limited to, cancer;

d. By permitting emissions of EtO, a known carcinogen, into the air from its Willowbrook facility before fully studying, researching, or understanding the deleterious impact that EtO inhalation exposure has on the health, safety, and well-being of those in the surrounding area;

e. Deliberately concealing his knowledge concerning the deleterious impact that EtO inhalation exposure has on those who live or work in the Willowbrook community;

f. By subjecting Plaintiff and those who live and work nearby Sterigenics Willowbrook facility to an elevated cancer risk without warning them of the same.

160. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

161. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering,

48

mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

## COUNT XV
### Ultrahazardous Activity / Strict Liability – GTCR, LLC

162.  Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 149 and 150 as if fully set forth as Paragraph 162.

163.  GTCR, LLC's use and emission of EtO from its Willowbrook facility constitutes an ultra-hazardous activity.

164.  GTCR, LLC's use and emission of EtO created a high degree of risk to those who live and work and the surrounding area. Further, the likelihood of cancer caused by its use and emission of EtO is as much as 64 times the level of acceptable risk.

165.  GTCR, LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

166.  While the activities conducted by GTCR, LLC are exceedingly dangerous, it offers little to no value to the surrounding community.

167.  Because the activities of GTCR, LLC are ultrahazardous, it is strictly liable for any injuries proximately resulting therefrom.

FILED DATE: 10/26/2018 3:10 PM   2018L010477

168.   As a direct and proximate result of GTCR, LLC's ultrahazardous activities, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

169.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

## COUNT XVI
## Civil Battery – GTCR, LLC

170.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 149 and 150 as if fully set forth as Paragraph 170.

171.   At all relevant times, GTCR, LLC knew or should have known that the EtO gas emitting from its Willowbrook facility would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons breathing it.

172.   Notwithstanding this knowledge, GTCR, LLC caused and/or set in motion events that caused EtO to come in contact with Plaintiff.

173.   Plaintiff's contact with EtO was offensive and harmful.

FILED DATE: 10/26/2018 3:10 PM    2018L010477

174. GTCR, LLC intended to emit EtO into the air with knowledge that it would contact those who live and work in the area surrounding its Willowbrook facility.

175. Plaintiff did not consent to contact with EtO emitted from the Sterigenics facility.

176. As a direct and proximate result of GTCR, LLC's emission of EtO, Plaintiff was contacted by EtO without her consent and was thereby exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

177. As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

## COUNT XVII
### Public Nuisance – GTCR, LLC

178. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 71 and 149 and 150 as if fully set forth as Paragraph 178.

179. The general public has a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

FILED DATE: 10/26/2018 3:10 PM    2018L010477

180.   GTCR, LLC's use and emission of EtO from its Willowbrook facility substantially and unreasonably infringes upon and/or transgresses this public right. In particular, the activities of Sterigenics U.S., LLC has caused those who live and work in the area surrounding its Willowbrook facility to breathe air containing high levels of EtO on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer.

181.   GTCR, LLC's use and emission of EtO is especially inappropriate given the area in which it is located; namely, within a densely populated residential area, and among schools, municipal buildings, and parks.

182.   As a result of GTCR, LLC's use and emission of EtO, Plaintiff was exposed to and inhaled great amounts of EtO while living in the Willowbrook community.

183.   As a direct and proximate result of Plaintiff's inhalation of EtO from Sterigenics facility, she developed lymphoma which has caused and will continue to cause Plaintiff to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and a loss of her normal life.

WHEREFORE Plaintiff, Lisa Flanagan, respectfully requests that judgment be entered in her favor and against GTCR, LLC in an amount be determined by a trier of fact.

### COUNT XVIII
### Loss of Consortium – All Defendants

FILED DATE: 10/26/2018 3:10 PM    2018L010477

184.   Plaintiff, Tom Markes, incorporates by reference all allegations contained in Paragraphs 1 through 183 as if fully set forth as Paragraph 184.

185.   Plaintiff, Tom Markes, was and remains the lawful husband of Lisa Flanagan.

186.   As a direct and proximate result of the aforementioned negligent and willful and wanton acts and/or omissions of Defendants, Plaintiff, Tom Markes, suffered a loss of consortium and was deprived of his wife, Lisa Flanagan's, services and companionship, and he continues to suffer these injuries.

187.   WHEREFORE Plaintiff, Tom Markes, respectfully requests that judgment be entered in his favor and against all Defendants in an amount to be determined by a trier of fact

Dated: October 26, 2018

Respectfully Submitted,

By:____/s Patrick A. Salvi_____
    One of the Attorneys for the Plaintiffs

Patrick A. Salvi (psalvi@salvilaw.com)
Jeffery J. Kroll (jkroll@salvilaw.com)
Aaron D. Boeder (aboeder@salvilaw.com)
Andrew J. Burkavage (aburkavage@salvilaw.com)
Heidi L. Wickstrom (hwickstrom@salvilaw.com)
SALVI, SCHOSTOK & PRITCHARD P.C.
161 North Clark Street, Suite 4700
Chicago, IL 60601
312-372-1227
312-372-3720 (fax)

FILED DATE: 10/26/2018 3:10 PM 2018L010477

Firm No.: 34560